**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MAKE THE ROAD NEW YORK, et al.,

*Plaintiffs*,

v.

KEVIN MCALEENAN, Acting Secretary of the Department of Homeland Security, et al.,

*Defendants*.

Civil Action No. 2019-cv-02369-KBJ

**PLAINTIFFS' SUPPLEMENTAL BRIEF**
**IN SUPPORT OF PRELIMINARY INJUNCTION**


Trina Realmuto**
Kristin Macleod-Ball**
American Immigration Council
1318 Beacon Street, Suite 18
Brookline, MA 02446
(857) 305-3600

Karolina J. Walters (D.C. Bar No. 1049113)
American Immigration Council
1331 G Street, NW, Suite 200
Washington, D.C. 20005
(202) 507-7520

Jonathan K. Youngwood**
Susannah S. Geltman**
Joshua Polster**
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
(212) 455-2000

Celso Perez (D.C. Bar No. 1034959)
Anand Balakrishnan**
Omar C. Jadwat**
Lee Gelernt**
American Civil Liberties Union Foundation, Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2600

Jennifer Chang Newell***
Stephen B. Kang**
Julie Veroff***
American Civil Liberties Union Foundation, Immigrants' Rights Project
39 Drumm Street
San Francisco, CA 94111
(415) 343-0774

Adrienne V. Baxley (D.C. Bar No. 1044750)****
Simpson Thacher & Bartlett LLP
900 G Street, N.W.
Washington, D.C. 20001
(202) 636-5822

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
American Civil Liberties Union
Foundation of the District of Columbia
915 15th Street, NW, 2nd floor
Washington, D.C. 20005
(202) 457-0800

*Attorneys for Plaintiffs*

**Pro hac vice application forthcoming*
*** Admitted pro hac vice*
****Filing pursuant to LCvR 83.2(c)*
*****Application for admission forthcoming*

## TABLE OF CONTENTS

INTRODUCTION .......... 1

ARGUMENT .......... 1

I. The Organizational Plaintiffs Have Associational Standing to Challenge the July 23 Rule.. .......... 1

A. Plaintiffs' Members Have Standing to Sue in Their Own Right. .......... 2

1. Plaintiffs' members are subject to the July 23 Rule's expansion of expedited removal. .......... 2

2. Plaintiffs' members have standing to challenge the July 23 Rule. .......... 4

B. The Interests The Lawsuit Seeks to Protect are Germane to Plaintiffs' Purposes, and the Participation of Individual Members is Not Required. .......... 6

II. *AILA v. Reno* Does Not Bar the Organizational Plaintiffs from Showing Standing Here.. 7

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Gardner*, 387 U.S. 136 (1977)........................................................................ 4

*Am. Chemistry Council v. Dep't of Transp.*, 468 F.3d 810 (D.C. Cir. 2006)............................. 1, 6

*American Immigration Lawyers Ass'n v. Reno*, 199 F.3d 1352 (D.C. Cir. 2000)................. 7, 8, 9

*American Immigration Lawyers Ass'n v. Reno*, 18 F. Supp. 2d 38 (D.D.C. 1998).................. 8, 9

*Califano v. Sanders*, 430 U.S. 99 (1977) .................................................................................. 4

*Comm. for Effective Cellular Rules v. F.C.C.*, 53 F.3d 1309 (D.C. Cir. 1995) ............................. 7

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ............................................................... 8

*Nat'l Min. Ass'n v. U.S. Army Corps of Engineers*, 145 F.3d 1399 (D.C. Cir. 1998) ................... 4

*Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428 (D.C. Cir. 1995) ......................... 6, 7

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)............................................................. 4

*Warth v. Seidlin*, 422 U.S. 490 (1975)......................................................................................... 1

**Statutes**

8 U.S.C. § 1225(b)(1)(B)(iii)(IV) ............................................................................................. 6

8 U.S.C. § 1226(a) ....................................................................................................................... 5

8 U.S.C. § 1325............................................................................................................................ 5

**Other Authorities**

Memorandum from John Kelly, Secretary of Homeland Security, "Enforcement of the Immigration Laws to Serve the National Interest," February 20, 2017..................................... 5

**Regulations**

8 C.F.R. § 235.3(b)(2)(iii)............................................................................................................ 6

## INTRODUCTION

Plaintiffs respectfully submit this supplemental brief to address the threshold question of standing.

The three Organizational Plaintiffs have standing to challenge the Notice Designating Aliens for Expedited Removal, 84 Fed. Reg. 35409 (July 23, 2019) ("Rule"). Each Plaintiff Organization has one or more members with standing to challenge the Rule. All three Plaintiff Organizations thus have associational standing to challenge the Rule.

## ARGUMENT

### I. The Organizational Plaintiffs Have Associational Standing to Challenge the July 23 Rule.

Under the doctrine of associational standing, "an association may have standing solely as the representative of its members," *Warth v. Seidlin*, 422 U.S. 490, 511 (1975), where three prongs are met: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Am. Chemistry Council v. Dep't of Transp.*, 468 F.3d 810, 815 (D.C. Cir. 2006) (internal citations and quotations omitted).

Where an organization alleges associational standing, it must show "that at least one member . . . has standing to pursue [its] challenge." *Id.* at 815 (internal citations and quotations omitted). A plaintiff must demonstrate, first, that the member has "suffered an injury in fact . . . which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; second, that the injury "is fairly traceable to the challenged action of the defendant"; and, third, that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (internal citations and quotations omitted).

**A. Plaintiffs' Members Have Standing to Sue in Their Own Right.**

**1. Plaintiffs' members are subject to the July 23 Rule's expansion of expedited removal.**

Plaintiffs have submitted sworn declarations, based on personal knowledge, describing particular members in each organization who are subject to the July 23 Rule's expanded scope of expedited removal. These same declarations also establish that each Plaintiff Organization includes members who fear erroneous placement in expedited removal because of the Rule's requirement that they affirmatively prove two years of continuous presence to the satisfaction of an immigration officer.

Plaintiff Make the Road New York ("MRNY") has thousands of noncitizen members, many of whom have been subject to enforcement activities by DHS in the metropolitan New York City area. Declaration of Paige Austin ("Austin Decl."), ¶¶ 6–10, ECF No. 13-3. Those enforcement actions occur across contexts—they include surveillance and arrests at courthouses, buses, and trains, as well as raids on workplaces and homes. *Id.* These enforcement actions result in the detention of individuals who are known to ICE, as well as "collateral" arrests of family members who may be present at the time of an arrest or raid. *Id.*

MRNY has at least three members who could be placed in expedited removal proceedings pursuant to the Rule, because they entered without inspection, and have been continuously present in the United States for less than two years. *Id.* ¶¶ 11–16. Two of these members are parents of noncitizen children. These parents are required to report periodically to ICE, and can be placed in expedited removal. *Id.* ¶¶ 13, 14.

MRNY also has other members who have been living in the United States for longer than two years but nonetheless fear being subject to expedited removal. *Id.* ¶¶ 15–18. At particular risk are some of MRNY's most vulnerable members: transgender and younger noncitizens who

came to the United States as children. *Id.* ¶ 16. These groups face particular challenges in proving continuous presence. Transgender noncitizens who have recently changed their legal name may not have documents proving continuous presence, or may have documents under multiple names. *Id.* Those who came as children will often lack documents showing their own presence, either because the relevant documents name their parents, or are with absent family members. *Id.* ¶ 17.

Plaintiff La Unión del Pueblo Entero ("LUPE"), a membership-based organization located in the Rio Grande Valley of Texas, has members who have been continuously present less than two years, and could be placed into expedited removal. Declaration of Juanita Valdez-Cox ("Valdez-Cox Decl."), ¶¶ 11–12, ECF 13-4. LUPE also has members who fear being deported pursuant to expedited removal despite their continuous presence for more than two years because they do not or will not have documents to demonstrate that presence to an immigration officer. *Id.* ¶¶ 13–14. LUPE members live near the U.S. border with Mexico, an area that is heavily policed by immigration enforcement; members travel frequently through roadside immigration checkpoints, where officers scrutinize the immigration status of even U.S. citizen members of LUPE. *Id.* ¶ 9. Enforcement activities—including raids—occur in members' neighborhoods, their workplaces, and at the bus stops they frequent. *Id.* ¶ 16.

Plaintiff WeCount! is a Florida membership-based organization whose members are mostly immigrants from Mexico, Guatemala and El Salvador. Declaration of Jonathan Fried, ("Fried Decl.") ¶ 7, ECF No. 13-5. WeCount! includes at least one individual who is has been continuously present for less than two years, and could be placed into expedited removal. *Id.* ¶ 11. Members of WeCount! have been the target of home and workplace raids by immigration officers, and traffic stops tied to immigration enforcement. *Id.* ¶ 13. Thus, even those members

who have been continuously present for two years or longer fear that an encounter with immigration officers would result in their inability to prove continuous presence and be subject to erroneous expedited removal. *Id.* ¶ 12.

**2. Plaintiffs' members have standing to challenge the July 23 Rule.**

The Plaintiff Organizations all have members who are subject to the July 23 Rule. Those members have standing to sue in their own right, before they are placed in expedited removal. The threat that members will be placed in expedited removal is "sufficiently imminent," because the July 23 Rule, by its own terms, applies immediately and broadly to all noncitizens who are potentially subject to its terms, and Defendants have represented that implementation of the July 23 Rule will begin on September 1. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 165 (2014) (finding injury-in-fact sufficiently imminent where "respondents have not disavowed enforcement" as to petitioners); *Abbott Labs. v. Gardner*, 387 U.S. 136, 151 (1977) (holding that pre-enforcement challenge to regulation was ripe for review because, inter alia, "[i]t was made effective upon publication," and government stated in district court "that compliance was expected"), *abrogated in part on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). *Cf. Nat'l Min. Ass'n v. U.S. Army Corps of Engineers*, 145 F.3d 1399, 1408 (D.C. Cir. 1998) (finding challenge to regulation reviewable where "its *faithful* application" would be unlawful).

Moreover, the Department of Homeland Security's policies identify Plaintiffs' members as priorities for arrest and removal. The Secretary of Homeland Security has designated as priorities for removal any individuals who "have committed acts which constitute a chargeable criminal offense." Memorandum from John Kelly, Secretary of Homeland Security, "Enforcement of the Immigration Laws to Serve the National Interest," February 20, 2017, at 2, *available at* https://www.dhs.gov/sites/default/files/publications/17_0220_S1_Enforcement-of-

the-Immigration-Laws-to-Serve-the-National-Interest.pdf. Since entry without inspection is a misdemeanor offense, 8 U.S.C. § 1325, Plaintiffs' members are a priority for removal even if they are law-abiding in all other respects.

The effect of the new Rule on Plaintiffs' members who are newly subject to expedited removal, as well as to those who are not properly subject to expedited removal but fear erroneous placement, will be to chill their freedom of movement, and freedom to access public spaces and government offices where immigration officers may be present. These individuals now face a heightened fear that any encounter with an immigration officer could result in their swift deportation, without any access to basic procedural mechanisms designed to protect against error.

Before the July 23 Rule, Plaintiffs' members would have been guaranteed much more time and more extensive procedures before being deported. Previously, each member would have been placed in full removal proceedings before an Immigration Judge, and provided with the right to counsel, to present and cross-examine evidence and witnesses, to preserve objections, to apply for relief from removal, and to appeal any adverse decision to the BIA and a court of appeals. They might also have been eligible for release from custody via an immigration judge bond hearing. *See* 8 U.S.C. § 1226(a).

Under the new Rule, *any* encounter with an immigration officer could easily end with Plaintiffs' members being deported, without ever speaking to an attorney or family member, or having a meaningful opportunity to challenge removal or apply for relief.[1] And under the government's view, members would be subject to mandatory detention, with no ability to go

[1] Plaintiffs also summarize the widespread flaws in the expedited removal process—including the erroneous application of expedited removal to U.S. citizens and lawful permanent residents—in their opening brief, ECF No. 13-1 at 8–12.

before an immigration judge and request release. *See* 8 U.S.C. § 1225(b)(1)(B)(iii)(IV); 8 C.F.R. § 235.3(b)(2)(iii).

Finally, Plaintiffs' members meet both the causation and redressability requirements of Article III standing. Their injuries—resulting from their potential placement in expedited removal—are "fairly traceable" to the July 23 Rule, and likely to be "redressed by a favorable decision." *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1435 (D.C. Cir. 1995) (citation and quotation marks omitted). The July 23 Rule extends and applies summary removal procedures to Plaintiff Organizations' members. Enjoining the Rule will redress their injuries.

### B. The Interests The Lawsuit Seeks to Protect are Germane to Plaintiffs' Purposes, and the Participation of Individual Members is Not Required.

The Plaintiff Organizations readily meet the second two prongs of the membership standing test. The interests the lawsuit seeks to protect are clearly "germane" to the three Plaintiff Organizations' purposes. *Am. Chemistry Council*, 468 F.3d at 815. *See* Austin Decl. ¶ 4 ("the core of [MRNYs] mission" includes local and federal advocacy on behalf of immigrant communities to create more equitable policies); Valdez-Cox Decl. ¶ 4 ("As a key part of our mission, LUPE and it[s] members organize to advocate for fair, humane, and sensible policies that impact immigrant communities" including advocacy to stop construction of private immigration detention centers, to end Administration's policy of family separation, and to challenge inclusion of citizenship question in 2020 census); Fried Decl. ¶¶ 4–5 ("WeCount! carries out its mission by organizing members and others . . . to advocate on behalf of immigrants," including by lobbying local government to limit cooperation between local law enforcement and immigration authorities, and holding trainings for members regarding changes in immigration policies).

Moreover, neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. Plaintiffs raise purely legal challenges to the July 23 Rule in their request for a Preliminary Injunction: (1) that the Rule failed to proceed through notice and comment and is (2) otherwise arbitrary and capricious, in violation of the Administrative Procedures Act; (3) that the Rule is contrary to the expedited removal statute; and (4 & 5) that the Rule violates the provisions of the APA and Immigration and Nationality Act that guarantee a right to counsel in certain administrative proceedings. These claims are the sorts of "broad facial challenge[s]" that do not require individualized proof and can be properly resolved in a group context. *Nat'l Taxpayers Union*, 68 F.3d at 1435. *See also Comm. for Effective Cellular Rules v. F.C.C.*, 53 F.3d 1309, 1315 (D.C. Cir. 1995) (finding associational standing where organization's "broad facial challenge" to regulations does "not require the participation of individual members").

## II. *AILA v. Reno* Does Not Bar the Organizational Plaintiffs from Showing Standing Here.

Defendants have suggested that the D.C. Circuit's decision in *American Immigration Lawyers Ass'n v. Reno* (*AILA v. Reno*), 199 F.3d 1352 (D.C. Cir. 2000) forecloses standing here. Defendants are wrong. *AILA* rejected only a claim of *organizational* standing made by plaintiffs who sought to assert "not their rights or the rights of their members, but the constitutional and statutory rights of unnamed aliens who were or might be subject to the [expedited removal] statute and regulations." 199 F.3d at 1357. *AILA* explicitly did not foreclose associational standing, in which plaintiffs assert the rights of their members. *AILA*, moreover, indicated that association standing would be available if certain predicates were met. *Id.* Those predicates are met here.

*AILA* was a multi-plaintiff challenge to the expedited removal provisions in the IIRIRA, as well as the Attorney General's Interim Regulations implementing those provisions.[2] Among the Plaintiffs were ten organizations. These ten organizations provided legal and other services to asylum seekers generally. *AILA v. Reno*, 18 F. Supp. 2d 38, 44–45 (D.D.C. 1998). None of the organizational plaintiffs alleged they had particular members who faced imminent harm from the challenged expedited removal procedures. *Id.* at 51.

The district court held that the plaintiffs failed to demonstrate organizational standing because the "injury alleged by the organizational plaintiffs is not palpable and is, at most, speculative [because they alleged] that they *may* have to expend or divert resources" in response to the new rules. *AILA*, 18 F. Supp. 2d at 49 (emphasis in original); *see Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (organization may have standing to challenge regulation because of "concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources").[3] The D.C. Circuit affirmed, but on the different ground that the Immigration and Nationality Act precluded the organizations' standing to "vindicate the rights of unnamed third parties—namely, aliens who have been or will be processed pursuant to the new law and regulations." *AILA v. Reno*, 199 F.3d at 1357. *See also id.* at 1365 (interpreting the statute to "strengthen[] the judicial presumption against suits seeking relief for a large and diffuse group of individuals, none of whom are parties to the lawsuit").

In contrast, the D.C. Circuit did not hold that the associational standing theory was foreclosed. Rather, the D.C. Circuit agreed with the district court that "the one injury alleged for associational standing but not for organizational standing—the claim that members of the

---

[2] At issue in *AILA v. Reno* was the initial application of the expedited removal system to non-citizens who applied for admission at ports of entry. 199 F.3d at 1354–55.

[3] The district court found that the organizations had standing to pursue certain First Amendment claims, 18 F. Supp. 2d at 52, but ruled against the organizations on the merits, *id*. at 62. The organizations did not pursue the First Amendment claims on appeal. 199 F.3d at 1357.

associations might someday be subject to summary removal" was "too speculative." *AILA v. Reno*, 199 F.3d at 1357. As the district court explained, the claim was speculative for two reasons. First, the organizational plaintiffs did not allege that any specific member was harmed by expedited removal. *AILA v. Reno*, 18 F.Supp. 2d at 51. Second, the injuries Plaintiffs did identify with regard to general classes of members was too speculative, as Plaintiffs alleged only that the challenged rule "will have a detrimental effect on some of [the organization's] Haitian members who, *in the future, might* be *bona fide* asylum seekers in the United States." *Id*. (emphasis in original).

Plaintiffs meet all the prerequisites for associational standing set forth in *AILA*. The three Organizational Plaintiffs have specified multiple members who are subject to expedited removal under the July 23 Rule because they have entered without inspection, shown that each of these individuals are members of their respective organizations, and that the government's regular and consistent immigration enforcement activities put the Organizations' members in danger of being subjected to expedited removal. *Id.* There is also now no dispute that the government intends to enforce the July 23 Rule to individuals within its scope, placing the Organizations' members at serious risk of erroneous removal.

Dated: August 21, 2019

Respectfully submitted,

*/s/ Celso Perez*

Celso Perez (D.C. Bar No. 1034959)
Anand Balakrishnan**
Omar C. Jadwat**
Lee Gelernt**
American Civil Liberties Union
Foundation, Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2600

Jennifer Chang Newell***
Stephen B. Kang**
Julie Veroff***
American Civil Liberties Union
Foundation, Immigrants' Rights Project
39 Drumm Street
San Francisco, CA 94111
(415) 343-0774

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
American Civil Liberties Union
Foundation of the District of Columbia
915 15th Street, NW, 2nd floor
Washington, D.C. 20005
(202) 457-0800

Trina Realmuto**
Kristin Macleod-Ball**
American Immigration Council
1318 Beacon Street, Suite 18
Brookline, MA 02446
(857) 305-3600

Karolina J. Walters (D.C. Bar No. 1049113)
American Immigration Council
1331 G Street, NW, Suite 200
Washington, D.C. 20005
(202) 507-7520

Jonathan K. Youngwood**
Susannah S. Geltman**
Joshua Polster**
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
(212) 455-2000

Adrienne V. Baxley (D.C. Bar No. 1044750)****
Simpson Thacher & Bartlett LLP
900 G Street, N.W.
Washington, D.C. 20001
(202) 636-5822

*Attorneys for Plaintiffs*

**Pro hac vice application forthcoming*
*** Admitted pro hac vice*
****Filing pursuant to LCvR 83.2(c)*
*****Application for admission forthcoming*