**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| MAKE THE ROAD NEW YORK, et al., | ) ) ) | |
| *Plaintiffs*, | ) ) | |
| v. | ) ) | |
| KEVIN MCALEENAN, Acting Secretary of the Department of Homeland Security, et al., | ) ) ) | Civil Action No. 2019-cv-02369-KBJ |
| *Defendants*. | ) ) ) | |

**PLAINTIFFS' REPLY IN SUPPORT
OF MOTION FOR PRELIMINARY INJUNCTION**

Trina Realmuto**
Kristin Macleod-Ball**
American Immigration Council
1318 Beacon Street, Suite 18
Brookline, MA 02446
(857) 305-3600

Karolina J. Walters (D.C. Bar No. 1049113)
American Immigration Council
1331 G Street, NW, Suite 200
Washington, D.C. 20005
(202) 507-7520

Jonathan K. Youngwood**
Susannah S. Geltman**
Joshua Polster**
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
(212) 455-2000

Celso Perez  (D.C. Bar No. 1034959)
Anand Balakrishnan**
Omar C. Jadwat**
Lee Gelernt**
Michael Tan*
American Civil Liberties Union
Foundation, Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2600

Jennifer Chang Newell***
Stephen B. Kang**
Julie Veroff***
American Civil Liberties Union
Foundation, Immigrants' Rights Project
39 Drumm Street
San Francisco, CA 94111
(415) 343-0774

Adrienne V. Baxley (D.C. Bar No. 1044750)****
Simpson Thacher & Bartlett LLP
900 G Street, N.W.
Washington, D.C. 20001
(202) 636-5822

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
American Civil Liberties Union
Foundation of the District of Columbia
915 15th Street, NW, 2nd floor
Washington, D.C. 20005
(202) 457-0800

*Attorneys for Plaintiffs*

*\*Pro hac vice application forthcoming*
*\*\* Admitted pro hac vice*
*\*\*\*Filing pursuant to LCvR 83.2(c)*
*\*\*\*\*Application for admission forthcoming*

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 2

  I.   Plaintiffs' Claims Are Subject to Judicial Review. ............................................ 2

    A.  Section 1252(e)(3) Provides Jurisdiction Over Plaintiffs' Claims. ................................. 2

    B.  Plaintiffs Are Well Within the Zone of Interests of § 1252(e)(3). ................................. 4

    C.  No Provision in the INA Denies Review of Plaintiffs' Claims....................................... 7

    D.  The Rule Constitutes Final Agency Action Under the APA......................................... 10

    E.  Plaintiffs Are Not Time-Barred From Challenging the Rule. ....................................... 10

  II.   Plaintiff Organizations Have Demonstrated Associational Standing. .......................... 11

    A.  Plaintiffs Are Traditional Membership Organizations................................................. 11

    B.  Plaintiffs Have Identified Specific Members Affected by the July 23 Rule. ................. 12

    C.  Plaintiffs' Members Face a Substantial Risk of Injury. ................................................ 13

  III.  The Rule Is Illegal. ...................................................................................... 16

    A.  The Rule Violates Notice and Comment Requirements. .............................................. 16

    B.  The Rule Violates the INA and Due Process. .............................................................. 19

      1.  AILA Does Not Foreclose Plaintiffs' Claims.......................................................... 19

      2.  Defendants' Other Attempts to Avoid Addressing Plaintiffs' Claims Are

         Meritless.................................................................................................................. 21

3.   The July 23 Rule's Failure to Provide Sufficient Safeguards to Guard Against

Erroneous Removal Violates the INA, as Read to Avoid Constitutional Doubt. ............. 25

C.   The Rule is Arbitrary and Capricious in Violation of the APA. .................................... 28

D.   The Rule Violates the Counsel Provisions of the APA and INA. ................................. 29

IV.   The Remaining Factors Weigh in Favor Issuing an Injunction. .................................... 32

V.   The Rule Should Be Enjoined In Its Entirety. .................................................................. 34

CONCLUSION ..................................................................................................................... 35

# TABLE OF AUTHORITIES

**Cases**

*Advocate Health Care Network v. Stapleton*, 137 S. Ct. 1652 (2017)........................................... 8

*AILA v. Reno*, 1997 WL 161944 (D.D.C. Mar. 31, 1997) ............................................................ 35

*AILA v. Reno*, 18 F. Supp. 2d 38 (D.D.C. 1998)................................................................. 6, 13, 20

*AILA v. Reno*, 1997 WL 404723 (D.C. Cir. June 18, 1997) ........................................................ 35

*Ali v. Fed. Bureau of Prisons*, 552 U.S. 214 (2008) ..................................................................... 31

*Ali v. Mukasey*, 529 F.3d 478, (2d Cir. 2008) .............................................................................. 20

*Am. Chemistry Council v. Dep't of Transp.*, 468 F.3d 810,  (D.C. Cir. 2006) ...................... 12, 13

*Am. Immigration Lawyers Ass'n v. Reno* (*AILA*), 199 F.3d 1352 (D.C. Cir. 2000) ............. passim

*American Wild Horse Preservation Campaign v. Salazar*, 859 F. Supp. 2d 33 (2012) ............... 29

*Ardestani v. INS*, 502 U.S. 129 (1991) ......................................................................................... 30

*Ass'n of Battery Recyclers, Inc. v. EPA*, 716 F.3d 667 (D.C. Cir. 2013) ....................................... 5

*Attias v. Carefirst, Inc.*, 865 F.3d 620 (D.C. Cir. 2017) ............................................................... 14

*Augustin v. Sava*, 735 F.2d 32 (2d Cir. 1984)............................................................................... 25

*Ballesteros v. Ashcroft*, 452 F.3d 1153 (10th Cir. 2006) ............................................................... 9

*Ballesteros v. Gonzales*, 482 F.3d 1205 (10th Cir. 2007)............................................................... 9

*Bayo v. Napolitano*, 593 F.3d 495 (7th Cir. 2010) ...................................................................... 20

*Bennett v. Spear*, 520 U.S. 154, (1997) ....................................................................................... 10

*Bridges v. Wixon*, 326 U.S. 135 (1945) ........................................................................................ 33

*Chamber of Comm v. EPA.*, 642 F.3d 192 (D.C. Cir. 2011) ........................................................ 13

*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290 (D.C. Cir. 2006)....................... 33

*Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.,* 489 F.3d 1279 (D.C. Cir. 2007)............... 14

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ................................................... 14

*Clark v. Martinez*, 543 U.S. 371 (2005) ...................................................................... 23

*Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388 (1987) ......................................................... 5

*Council of S. Mountains, Inc. v. Donovan*, 653 F.2d 573 (D.C. Cir. 1981)................................. 18

*Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin,* 452 F.3d 798 (D.C. Cir. 2006) ...... 10

*Ctr. for Sustainable Econ. v. Jewell*, 779 F.3d 588 (D.C. Cir. 2015) ...................................... 6, 11

*Den ex dem. Murray v. Hoboken Land & Imp. Co.*, 59 U.S. 272 (1855) .................................... 24

*Dep't of Commerce v. New York*, 139 S. Ct. 2551 (2019) ...................................................... 12, 14

*Dia v. Ashcroft*, 353 F.3d 228 (3d Cir. 2003) ............................................................... 24

*DRG Funding Corp. v. Sec'y of Hous. & Urban Dev.*,76 F.3d 1212 (D.C. Cir. 1996) ............... 10

*EBSC v. Barr*, 385 F. Supp. 3d 922 (N.D. Cal. 2019) .................................................... 18

*EBSC v. Trump*, 354 F. Supp. 3d 1094 (N.D. Cal. 2018) ............................................... 18

*Elec. Privacy Info. Ctr. v. U.S. Dep't of Commerce*, 928 F.3d 95 (D.C. Cir. 2019) ................... 12

*Envtl. Integrity Project v. EPA*, 177 F. Supp. 3d 36 (D.D.C. 2016)............................................. 16

*Envtl. Integrity Project v. EPA*, 864 F.3d 648 (D.C. Cir. 2017)................................................. 16

*Food & Water Watch, Inc. v. Vilsack,* 79 F. Supp. 3d 174 (D.D.C. 2015)................................... 14

*Gebhardt v. Nielsen*, 879 F.3d 980 (9th Cir. 2018) ...................................................... 9

*Genuine Parts Co. v. EPA*, 890 F.3d 304 (D.C. Cir. 2018) ........................................... 28

*Grace v. Whitaker*, 344 F. Supp. 3d 96 (D.D.C. 2018)........................................................ 34, 35

*Gunpowder Riverkeeper v. FERC*, 807 F.3d 267 (D.C. Cir. 2015) ................................... 5

*Hibbs v. Winn*, 542 U.S. 88, 101 (2004) ...................................................................... 31

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) .......................................... 15

*Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977) ............................... 11

*Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d 983 (9th Cir. 2012) ................................................ 24

*Navy Chaplaincy v. United States Navy*, 697 F.3d 1171 (D.C. Cir. 2012).................................. 14

*INS v. St. Cyr*, 533 U.S. 289 (2001)................................................................................................ 3

*J. Roderick MacArthur Foundation v. FBI*, 102 F.3d 600 (D.C. Cir. 1996) ............................. 14

*Johnson v. Eisentrager*, 339 U.S. 763 (1950)................................................................................ 19

*Kleindienst v. Mandel*, 408 U.S. 753 (1972)................................................................................ 19

*Kucana v. Holder*, 558 U.S. 233 (2010) ........................................................................................ 3

*La Unión del Pueblo Entero v. Ross*, 353 F. Supp. 3d 381 (D. Md. 2018) ................................. 12

*Landon v. Plasencia*, 459 U.S. 21 (1982) ..................................................................................... 24

*Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State, Bureau of Consular Affairs*,
      104 F.3d 1349 (D.C. Cir. 1997)............................................................................................ 24

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)............................... 7

*Maldonado-Perez v. INS*, 865 F.2d 328 (D.C. Cir. 1989) ........................................................... 23

*Mantena v. Johnson*, 809 F.3d 721 (2d Cir. 2015) ........................................................................ 9

*Marincas v. Lewis*, 92 F.3d 195 (3d Cir. 1996) ........................................................................... 25

*Martinez-Aguero v. Gonzalez*, 459 F.3d 618 (5th Cir. 2006) ...................................................... 24

*Mathews v. Diaz*, 426 U.S. 67  (1976).......................................................................... 20, 22, 25

*Mendoza v. Perez*, 754 F.3d 1002 (D.C. Cir. 2014) ................................................................. 4, 5

*Mills v. Dist. of Columbia*, 571 F.3d 1304 (D.C. Cir. 2009) ....................................................... 32

*Mineral Policy Ctr. v. Norton*, 292 F. Supp. 2d 30 (D.D.C. 2003) ............................................ 22

*Musunuru v. Lynch*, 831 F.3d 880 (7th Cir. 2016) ........................................................................ 9

*NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958) ....................................................... 13

*NAACP v. Trump*, 298 F. Supp. 3d 209 (D.D.C. 2018).............................................................. 13

*Nat'l Min. Ass'n v. Jackson*, 856 F. Supp. 2d 150 (D.D.C. 2012)................................................. 29

*Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8 (D.C. Cir. 2005)...................................... 10

*Nat'l Min. Ass'n v. U.S. Army Corps of Engineers*, 145 F.3d 1399 (D.C. Cir. 1998) ................. 34

*Nat'l Women, Infants, & Children Grocers Ass'n.*, 416 F. Supp. 2d 92 (D.D.C. 2006). ............. 17

*New York Republican State Comm. v. SEC*, 927 F.3d 499 (D.C. Cir. 2019)................................ 13

*New York v. U.S. Dep't of Commerce*, 351 F. Supp. 3d 502 (S.D.N.Y. 2019)............................ 12

*Nken v. Holder*, 556 U.S. 418 (2009) ....................................................................................... 34

*Osorio-Martinez v. U.S. Att'y Gen.*, 893 F.3d 153 (3d Cir. 2018)............................................. 24

*Power Mobility Coal. v. Leavitt*, 404 F. Supp. 2d 190 (D.D.C. 2005) ........................................ 33

*R.I.L-R v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015) ................................................................ 35

*Rafeedie v. INS*, 880 F.2d 506 (D.C. Cir. 1989) ....................................................................... 24

*Sackett v. EPA*, 566 U.S. 120 (2012) ....................................................................................... 10

*Sale v. Haitian Ctrs. Council*, 509 U.S. 155 (1993) .................................................................. 20

*Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206  (1953) .............................................. 20

*Sierra Club v. Fed. Energy Regulatory Comm'n*, 827 F.3d 59 (D.C. Cir. 2016) .................. 12, 34

*Sorenson v. FCC*, 755 F.3d 702  (D.C. Cir. 2014)...................................................................... 18

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)..................................................... 13, 15

*Syncor Int'l Corp. v. Shalala*, 127 F.3d 90 (D.C. Cir. 1997)..................................................... 17

*Ukrainian–American Bar Ass'n v. Baker*, 893 F.2d 1374 (D.C. Cir. 1990)........................... 20, 23

*United Food & Commer. Workers Union Local 751 v. Brown Grp.*, 517 U.S. 544 (1996).......... 6

*United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537 (1950).............................................. 20

*United States v. Barajas-Alvarado*, 655 F.3d 1077 (9th Cir. 2011) ........................................... 24

*United States v. Campos-Asencio*, 822 F.2d 506 (5th Cir. 1987) ................................................ 23

*United States v. Peralta-Sanchez*, 847 F.3d 1124 (9th Cir.) ........................................... 26

*United States v. Quinteros*, No. 3:18-CR-00031-001, 2019 WL 3220576

    (W.D. Va. July 17, 2019) ..................................................................................... 30

*United States v. Raya-Vaca*, 771 F.3d 1195 (9th Cir. 2014) ..................................... 23

*United States v. Salerno*, 481 U.S. 739 (1987) ............................................................ 22

*United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990) ........................................... 23

*Valero Energy Corp. v. EPA*, 927 F.3d 532 (D.C. Cir. 2019) ..................................... 10

*Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305 (1985) ........................... 26

*Warth v. Seldin*, 422 U.S. 490 (1975) ......................................................................... 11

*Wis. Gas Co. v. Fed. Energy Regulatory Comm'n*, 758 F.2d 669 (D.C. Cir. 1985) .................... 32

*Yamataya v. Fisher,* 189 U.S. 86 (1903) .......................................................... 22, 23

*Young Am.'s Found. v. Gates*, 560 F. Supp. 2d 39  (D.D.C. 2008) .............................. 13

*Zadvydas v. Davis*, 533 U.S. 678 (2001) ........................................................ 9, 20, 28

*Zakonaite v. Wolf*, 226 U.S. 272  (1912) .................................................................. 24

*Zheng v. Mukasey*, 552 F.3d 277, 279, (2d Cir. 2009) ............................................... 23

**Statutes**

5 U.S.C. § 555 ............................................................................................................. 31

5 U.S.C. § 555(b) ................................................................................................. 21, 30

5 U.S.C. § 559 ............................................................................................................. 30

5 U.S.C. § 701(a)(2) .................................................................................................. 7, 9

8 U.S.C. § 1154(a)(1)(A)(viii)(I) ................................................................................. 9

8 U.S.C. § 1225 ........................................................................................................... 19

8 U.S.C. § 1225(b) ......................................................................................... 2, 3, 8, 16

8 U.S.C. § 1225(b)(1) ............................................................................................ 3, 4

8 U.S.C. § 1225(b)(1)(A)(i) ........................................................................................ 26

8 U.S.C. § 1225(b)(1)(A)(iii) .................................................................................. 8, 28

8 U.S.C. § 1225(b)(1)(A)(iii)(I) ........................................................................ 7, 8, 16

8 U.S.C. § 1225(b)(1)(B)(iv) ...................................................................................... 30

8 U.S.C. § 1225(b)(2)(A) ............................................................................................ 26

8 U.S.C. § 1229a(a)(3) ................................................................................................ 30

8 U.S.C. § 1229a(c)(2)(A) .......................................................................................... 26

8 U.S.C. § 1252 .............................................................................................................. 3

8 U.S.C. § 1252(e)(3)(A) .............................................................................................. 7

8 U.S.C. § 1252(e)(3)(A)(i) .......................................................................................... 8

8 U.S.C. § 1252(e)(3)(A)(ii) ......................................................................................... 8

8 U.S.C. § 1252(a)(2)(A)(i) ........................................................................................... 3

8 U.S.C. § 1252(a)(2)(A)(iv) ......................................................................................... 3

8 U.S.C. § 1252(a)(2)(B)(ii) .......................................................................................... 8

8 U.S.C. § 1252(a)(2)(D) ............................................................................................... 9

8 U.S.C. § 1252(b) ....................................................................................................... 30

8 U.S.C. § 1252(e) .......................................................................................................... 3

8 U.S.C. § 1252(e)(1)(A) ............................................................................................. 34

8 U.S.C. § 1252(e)(3) ........................................................................................ 1, 2, 3, 4

8 U.S.C. § 1252(e)(3)(A) .................................................................................... 3, 9, 22

8 U.S.C. § 1252(e)(3)(B) ............................................................................................... 1

8 U.S.C. § 1362 ..................................................................................................... 21, 31

8 U.S.C. § 235(b)(1) ................................................................................................... 3

**Other Authorities**

Abigail Hauslohner, *ICE agents raid Miss. work sites, arrest 680 people in largest single-state immigration enforcement action in U.S. history*, Wash. Post, Aug. 7, 2019 ........................... 15

Guillermo Cantor, et al., Am. Imm. Council, *Changing Patterns of Interior Enforcement in the United States, 2016–2018* at 6–10 (2019) ................................................................................ 15

Memorandum from John Kelly, Secretary of Homeland Security, Enforcement of the Immigration Laws to Serve the National Interest 2 (Feb. 20, 2017) ....................................... 14

Merriam-Webster Dictionary Online, http://www.merriamwebster.com/dictionary/implement (last visited Sept. 2, 2019) .......................................................................................................... 8

U.S. Immigration and Customs Enforcement, ICE worksite enforcement investigations in FY18 surge (Dec. 11, 2018) ........................................................................................................... 15

**Regulations**
8 C.F.R. § 253.3(b)(ii) ................................................................................................. 19

## INTRODUCTION

Defendants' decision to expand expedited removal without fair procedures has massive ramifications for the due process rights and lives of hundreds of thousands of people—including the members of the Plaintiff organizations and their families.  Because of the Rule, noncitizens with connections to the United States will lose their long-standing right to a full and fair removal hearing and face swift deportation pursuant to an error-ridden system.

This Court should preliminarily enjoin the new Rule.  Defendants advance a set of sweeping arguments that would leave the new Rule unreviewable, no matter the claim or the plaintiff.  But Congress specifically provided for the judicial review of the "implementation" of the expedited removal system.  8 U.S.C. § 1252(e)(3).  Defendants' arguments, if accepted, would flout Congress's intent and bury the expedited removal system in a legal black hole.

Plaintiffs have standing to challenge the Rule on behalf of their members who face a substantial risk of being subjected to expedited removal under Defendants' expansive enforcement agenda.  Indeed, Defendants' actions underscore the importance of pre-enforcement review.  Congress provided that lawsuits challenging the implementation of an expedited removal regulation or policy directive must be filed within 60 days.  8 U.S.C. § 1252(e)(3)(B).  Plaintiffs filed this case two weeks after the July 23 regulation was implemented; weeks later, Defendants disclosed, for the first time, a memorandum issued July 24 showing Defendants' intent to delay application until September 1—*40 days* after the Rule was published.  This planned delay demonstrates the dangers of allowing Defendants to manipulate access to this Court by deciding when and how to apply the new Rule, and the importance of maintaining review over agency implementations of the expedited removal system, as Congress intended.

Defendants' arguments on the merits are equally unconvincing.  Defendants fail to show

1

that Congress displaced the Administrative Procedure Act's (APA) notice-and-comment requirements, and Defendants have not shown "good cause" to waive those requirements. Moreover, the Rule—which strips noncitizens of their right to a full removal proceeding and newly subjects them to expedited removal procedures—is clearly legislative.

Defendants take the extreme position that noncitizens subject to the Rule lack due process rights and that the implementation of expedited removal can therefore raise no constitutional concerns. But the Supreme Court and this Circuit have rejected that view, and expedited removal's track record clearly shows that the system lacks adequate safeguards. Thus, the Rule violates both the Immigration and Nationality (INA) and due process, and is arbitrary and capricious in violation of the APA. Defendants' arguments that the APA and INA's guarantees of access to counsel do not apply also lack merit: Congress did not supersede the right to counsel in either statute.

Finally, having waited more than two and a half years to expand expedited removal, Defendants cannot demonstrate harm from a preliminary injunction, nor do Defendants provide any convincing argument for how an injunction would cause a surge of unlawful migration, as they claim. In contrast, the Rule exposes countless noncitizens to the risk of unlawful and erroneous deportation. Thus, Plaintiffs' motion for a preliminary injunction should be granted.

## ARGUMENT

### I.      Plaintiffs' Claims Are Subject to Judicial Review.

#### A.       Section 1252(e)(3) Provides Jurisdiction Over Plaintiffs' Claims.

Defendants argue that 8 U.S.C. § 1252(e)(3) authorizes this Court to review the implementation of the expedited removal statute only "if Plaintiffs are in fact subject to 'determinations under section 1225(b) of this Title.'" Defendants' Opposition, ECF 25 ("Opp.")

18.  But that is not what Congress wrote.  Section 1252(e)(3)(A) authorizes "judicial review of determinations under section 1225(b) of this title *and its implementation*" (emphasis added). Congress thus distinguished between challenges to the determinations made in the course of expedited removal proceedings and challenges to the implementation of the statute.  Nowhere in (e)(3) or its subsections did Congress specify that a "determination" is the necessary "trigger" for judicial review, as Defendants assert.

The distinction between review of a "determination" and review of the "implementation" of the expedited removal statute runs throughout 8 U.S.C. § 1252, the judicial review provision of the INA.  Section 1252(a)(2)(A)(i) bars a court from reviewing "any individual determination or" from "entertain[ing] any other cause or claim arising from or relating to . . . an order of removal pursuant to section 1225(b)(1)," "except as provided in subsection (e)."  Section 1252(a)(2)(A)(iv) *separately* bars a court from reviewing "procedures and policies adopted . . . to implement [section 1225(b)(1)]," "except as provided in subsection (e)."  This consistent distinction confirms that Congress intended to provide review of both "determinations" *and* "implementations" of the expedited removal system.  *See Kucana v. Holder*, 558 U.S. 233, 251 (2010) (applying "a familiar principle of statutory construction: the presumption favoring judicial review of administrative action").

Against the weight of the textual evidence, Defendants can rely only on the title of § 1252(e) ("Judicial review of orders under section 235(b)(1)").  But titles cannot trump specific statutory language.  *See INS v. St. Cyr*, 533 U.S. 289, 308–09 (2001) (explaining that "a title alone is not controlling" and eschewing reliance on title in favor of text of operative provisions).

Defendants also seek to rely on *Am. Immigration Lawyers Ass'n v. Reno* (*AILA*), 199 F.3d 1352 (D.C. Cir. 2000), Opp. 18–19, but *AILA* plainly did not purport to interpret the scope

of § 1252(e)(3)'s jurisdiction, nor was it even presented with individuals seeking pre-enforcement review of the implementation of expedited removal or with associations whose members faced the risk of placement in expedited removal. *See infra* at I.B.

The ramifications of Defendants' interpretation, if accepted, would be stunning. If review of the "implementation" of Section 1225(b)(1) required placement into expedited removal, Defendants would have unilateral control over the availability of judicial review of such "implementation" under § 1252(e)(3). Defendants could adopt a new implementation of expedited removal, but refuse to finalize removal orders for 60 days, thereby forever evading judicial review of their policies. Notably, the recently-disclosed July 24 Memorandum clarifies that when Defendants issued the July 23 Rule, they did so with the intent of delaying application until September 1—40 days after the Rule was published. ECF 25-1 at 4. Defendants have not stated how many, if any, noncitizens they intend to subject to the Rule in the days and weeks following September 1. Congress did not grant judicial review over executive action only to have the availability of that review turn on the absolute discretion of the Executive.

### B.      Plaintiffs Are Well Within the Zone of Interests of § 1252(e)(3).

Defendants are mistaken that neither organizations nor individuals who are not yet in expedited removal proceedings are within the zone of interests of § 1252(e)(3). Opp. 20. Defendants' argument, if accepted, again would undermine Congress's express intent to provide review over implementations of the expedited removal statute.

The zone-of-interests test asks the "statutory question of whether a legislatively conferred cause of action"—in this case, § 1252(e)(3)—"encompasses a particular plaintiff's claim." *Mendoza v. Perez*, 754 F.3d 1002, 1016 (D.C. Cir. 2014) (citation omitted). In an associational standing case, the inquiry is whether an organization's members—not the organization—fall

4

within a statute's zone of interests. *See Gunpowder Riverkeeper v. FERC*, 807 F.3d 267, 272 (D.C. Cir. 2015); *Ass'n of Battery Recyclers, Inc. v. EPA*, 716 F.3d 667, 672–73 (D.C. Cir. 2013).

The test is "not a demanding one": a "plaintiff's grievance [must only] *arguably* fall within the zone of interests protected or regulated by the statutory provision." *Mendoza*, 754 F.3d at 1016–17 (emphasis added). "We do not require any indication of congressional purpose to benefit the would-be plaintiff." *Id.* at 1016. A plaintiff falls outside the zone only when their "interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987).

Because they are at risk of expedited removal, Plaintiffs' members easily clear the bar of being "arguably" within the scope of § 1252(e)(3), which is all about providing an avenue to challenge the "implementation" of the expedited removal statute. Their interests are consistent with the statute's goal.

Defendants rely on language in *AILA* to assert otherwise, Opp. 20, but it is inapposite. There were no pre-enforcement individuals seeking review in *AILA*, and any associational standing claims were dismissed because the organizations had not provided sufficient proof that their members would be subject to the challenged expedited removal process. *AILA*, 199 F.3d at 1357. The language Defendants cite from *AILA* arose in the context of a claim of third-party standing by organizational plaintiffs that the "new system violates, not their rights or the rights of their members, but the constitutional and statutory rights of unnamed aliens. . . ." *Id.*

*AILA* explicitly eschewed a zone-of-interests analysis, and instead considered only

whether the organizations could invoke the third-party standing doctrine.[1]  *See id.* at 1357–58.

The Court rejected the notion that "hindrances" to third parties satisfied that prudential inquiry.

*Id*. at 1362.  The prudential test employed in *AILA* has no applicability to an associational

standing inquiry.  *Cf. Ctr. for Sustainable Econ. v. Jewell*, 779 F.3d 588, 596–99 (D.C. Cir.

2015) (assessing associational standing without reference to third-party standing doctrine). *See*

*United Food & Commer. Workers Union Local 751 v. Brown Grp.*, 517 U.S. 544, 557 (1996)

(explaining distinction between doctrine of associational standing and the prudential judicial

"presumption . . . that litigants may not assert the rights of third parties.").

Moreover, the prudential considerations that counseled against third-party standing in

*AILA* are absent here.  The Court in *AILA* was heavily influenced by the government's assertion

that *more than 10,000* noncitizens had been subjected to expedited removal in the 60-day

statutory window, which raised questions as to why those people were not directly before the

Court, particularly where the organizations did "not allege that, despite their best efforts, they

were unable to identify and provide legal assistance to" noncitizens facing expedited removal.

199 F.3d at 1363.  Furthermore, because the expedited removal process challenged in *AILA*

applied to all noncitizens applying for admission at a port of entry, the third-party standing

theory was "unbounded" and would have swept in "nearly all [non-citizens] anywhere in the

world who would have tried or will try to enter the United States."  *Id*. at 1359.  Neither factor is

present here:  Defendants did not even plan on placing anyone in expedited removal proceedings

until September 1, and Plaintiffs' theory of standing is bound to discrete and specified

organizational members.

---

[1] *AILA* had no occasion to conduct a zone-of-interests analysis with respect to the plaintiffs' associational standing theory, as it simply affirmed the district court's finding that the theory was too speculative.  *AILA*, 199 F.3d at 1357. *See also AILA v. Reno*, 18 F. Supp. 2d 38, 51 (D.D.C. 1998) (noting that "Plaintiffs concede the factual insufficiency of their pleadings" by admitting that "it will be impossible to identify individual refugees before they suffer irreparable harm.").

Defendants cite to *AILA*'s observation that the INA gives the "impression" that Congress meant to allow litigation by noncitizens "against whom the new procedure had been applied," but take that language entirely out of context. Opp. 20 (citing *AILA*, 199 F.3d at 1360). *AILA* looked to the INA only to determine whether Congress had affirmatively rebutted the judicial presumption against third-party standing. *AILA*, 199 F.3d at 1358. But the third-party standing and "zone of interest" inquiries are distinct, as *AILA* itself makes clear by relying on one and not the other. *See also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 n.3 (2014) (expressly distinguishing zone-of-interest inquiry from third-party standing rules).

**C.      No Provision in the INA Denies Review of Plaintiffs' Claims.**

Defendants argue that Plaintiffs' challenges are not reviewable because § 1225(b)(1)(A)(iii)(I) confers "sole and unreviewable discretion" to designate the persons who can be subjected to expedited removal. Opp. 18–19. Defendants also contend this language renders such designations an "action [that] is committed to agency discretion by law," 5 U.S.C. § 701(a)(2), and therefore Plaintiffs' claims are unreviewable under the APA. Opp. 25–26.

Defendants' arguments fail for a simple reason: Plaintiffs are not challenging the "designation" at all. In context, the "designation" refers to the decision as to what categories of noncitizens will be subject to expedited removal. *See* Designation, *Black's Law Dictionary* (11th ed. 2019) ("The act of . . . . giving the person or thing a particular description."). In contrast, Plaintiffs' claims all go to the manner in which Defendants *implement* the designation decision, including the process by which that designation is made, as well as the manner in which Defendants implement the expedited removal statute through written rules and policies that set out the procedures that apply in expedited removal proceedings.

1.      The INA plainly distinguishes among three different decisions—"designation,"

"implementation," and "determination"—and expresses a clear intent to provide judicial review over the latter two.  Sections 1252(e)(3) and (e)(3)(A) provide for judicial review of "challenges on [the] validity of the system," and of "determinations under section 1225(b) *and its implementation*."  Section 1252(e)(3) provides review over the constitutionality of "any regulation issued to *implement*" a section of the expedited removal statute, (e)(3)(A)(i), and "whether such a regulation, written policy guideline, or written procedure issued . . . to *implement* such a section, is not consistent with the applicable provisions of this title or is otherwise in violation of law," (e)(3)(A)(ii).

Thus, under the plain language of the statute, a "designation" under § 1225(b)(1)(A)(iii)(I) is a decision to apply the expedited removal system to certain classes of non-citizens.  As explained above, a "determination" is an individual decision made in the course of expedited removal proceedings.  And an "implementation"—which is the target of Plaintiffs' challenges—goes to the *manner* in which both occur.  *See* Merriam-Webster Dictionary Online, http://www.merriamwebster.com/dictionary/implement (last visited Sept. 2, 2019) (defining "implement" as "to give practical effect to and ensure of actual fulfillment by concrete measures").  By suggesting that § 1225(b)(1)(A)(iii)'s "sole and unreviewable language" eliminates judicial review of *all* of Plaintiffs' claims, and not only claims challenging the *designation* of noncitizens for expedited removal, Defendants ignore Congress's use of specific words to refer to each of these three acts.  *See Advocate Health Care Network v. Stapleton*, 137 S. Ct. 1652, 1659 (2017) ("[E]ach word Congress uses is there for a reason.").

2.      Once this key distinction is recognized, all of Defendants' arguments fall away.  Their argument based on § 1252(a)(2)(B)(ii) depends entirely on the notion that Plaintiffs are challenging the "designation."  Because they are not, § 1252(a)(2)(B)(ii) has no bearing here.

Moreover, § 1252(a)(2)(B)(ii) does not bar review of legal and constitutional challenges, as distinguished from the agency's ultimate discretionary decisions.  *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001); *Musunuru v. Lynch*, 831 F.3d 880, 888 (7th Cir. 2016); *Mantena v. Johnson*, 809 F.3d 721, 728 (2d Cir. 2015).

3.      Defendants' arguments based on 5 U.S.C. § 701(a)(2) are similarly flawed.  Opp. 25–29. Plaintiffs do not challenge a decision "committed to agency discretion by law"—i.e., the designation decision.  Plaintiffs challenge implementations under § 1252(e)(3).

Defendants' key cases, which construe the distinct "sole and unreviewable" language in the Adam Walsh Act, are distinguishable.  Opp. 27–28 (citing *Bakran, Gebhardt,* and *Bremer*). There, the pertinent statute provided that a citizen convicted of a specified sexual and violent offense against a minor may not petition for a visa for an immediate relative "unless the Secretary of Homeland Security, in the Secretary's sole and unreviewable discretion, determines that the citizen poses no risk[.]"  8 U.S.C. § 1154(a)(1)(A)(viii)(I).  The plaintiffs' claims were challenging those very "determinations" in the absence of a provision (like § 1252(e)(3)) that confers judicial review over the "implementation" of the statute, including all written rules, policies, or guidance.[2]  Moreover, even *Gebhardt* found jurisdiction over "predicate legal question[s]" and questions of "Congress's intent," and assumed review of constitutional claims was available.  *Gebhardt v. Nielsen*, 879 F.3d 980, 985, 986, 987 (9th Cir. 2018).

Defendants' APA-based argument fails for yet another reason, which is that the INA provides Plaintiffs an express cause of action distinct from that of the APA.  Section 1252(e)(3) makes judicial review of such claims "available in an action instituted in the United States

---

[2] In other contexts, courts have recognized that similar language must be construed to restore jurisdiction over legal claims, even where Congress may have otherwise limited review.  *See Ballesteros v. Ashcroft*, 452 F.3d 1153, 1157, 1158 (10th Cir. 2006), *adhered to in part on reh'g sub nom. Ballesteros v. Gonzales*, 482 F.3d 1205 (10th Cir. 2007) (reviewing notice-and-comment challenge because it fell among the "constitutional claims or questions of law" rendered reviewable by 8 U.S.C. § 1252(a)(2)(D)).

District Court for the District of Columbia," 8 U.S.C. § 1252(e)(3)(A), thereby providing a specific cause of action for injunctive relief for Plaintiffs' claims.

### D. The Rule Constitutes Final Agency Action Under the APA.

Defendants claim the Rule is not final agency action.  This argument is inconsistent with their position that § 1252(e)(3)'s 60-day clock starts on the date of a written policy, and serves only to allow Defendants to evade judicial review of the expedited removal system.

The APA's test for finality is easily met here: first, the Rule unquestionably is a "'consummation' of the agency's decisionmaking process," *Bennett v. Spear*, 520 U.S. 154, 178 (1997), and Defendants do not contend otherwise.  Second, the Rule results in "legal consequences" by subjecting them to the expedited removal process and the penalty of a possible expedited removal order.  *See id.*; *see also Sackett v. EPA*, 566 U.S. 120, 126, 131 (2012) (finding finality where EPA order subjected plaintiffs to certain agency procedures and "expose[d] the [the plaintiffs] to double penalties *in a future enforcement proceeding* (emphasis added)).[3]

### E. Plaintiffs Are Not Time-Barred From Challenging the Rule.

Finally, Defendants argue that Plaintiffs' claims are time-barred by the 60-day limitation on § 1252(e)(3) actions because they purportedly challenge the expedited removal system first implemented in 1997.  Opp. 19–20.  Under Defendants' theory, even an individual who is issued an expedited removal order pursuant to the new Rule in the next week will have no ability to challenge its implementation.

---

[3] The cases Defendants cite at Opp. 29–30 are inapposite.  *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.* addressed an agency letter "with no legal force." 452 F.3d 798, 808 (D.C. Cir. 2006).  The policy in *Valero Energy Corp. v. EPA* did "not expose any regulated party to the possibility of an enforcement action" and had "no binding effect." 927 F.3d 532, 536 (D.C. Cir. 2019).  *Nat'l Ass'n of Home Builders v. Norton* concerned voluntary, nonbinding protocols. 415 F.3d 8, 14–15 (D.C. Cir. 2005).  *DRG Funding Corp. v. Sec'y of Hous. & Urban Dev.* turned on a lack of authority to make a final agency determination.  76 F.3d 1212, 1214–15 (D.C. Cir. 1996).

Defendants ignore that they are implementing expedited removal to a completely new population.  Plaintiffs are challenging the government's failure to provide adequate procedures when applying expedited removal to this population, not the system as first promulgated in 1997.  The fact that some of these same procedures have been in place for some time is beside the point.  Prior to the July 23 announcement, these procedures were not being applied to the newly designated population that is challenging them here.

Defendants' position leads to plainly absurd results.  Noncitizens who had entered unlawfully and were in the United States for up to two years would have plainly lacked standing to challenge the 1997 regulations, because those regulations did not apply to them.  Yet under Defendants' view, they cannot challenge the system now.  Congress could not have empowered Defendants to apply expedited removal to noncitizens with strong due process rights, but then deny those noncitizens any opportunity to challenge that decision.  And at a minimum, Defendants have now issued the July 24 Policy Directive, which is undoubtedly a new "implementation" of expedited removal.

## II.    Plaintiff Organizations Have Demonstrated Associational Standing.

### A.  Plaintiffs Are Traditional Membership Organizations.

Defendants first claim that Plaintiffs have not demonstrated that they are membership organizations. Opp. 21.  Not so.  Plaintiffs have plainly demonstrated they are "traditional" membership organizations.  *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 342–44 (1977).  The hallmark of such organizations is that they be an "appropriate representative of [their] members."  *Warth*, 422 U.S. at 511; *see also Jewell*, 779 F.3d at 598 (traditional membership organizations have a "defined mission that serves a discrete, stable membership with a definable set of common interests.").

11

All three Plaintiffs have defined missions, and seek to improve the lives of discrete populations of immigrant communities.  ECF 13-3 ¶¶ 3–5 (describing MRNY's mission to "build the power of immigrant and working class communities" in New York); ECF 13-4 ¶¶ 3–5 (describing LUPE's mission to organize members "to advocate for fair, humane, and sensible policies that impact immigrant communities" in South Texas); ECF 13-5 ¶¶ 3–5 (describing WeCount!'s mission to "build the power of the immigrant community through education, support, and collective action" in South Florida).

Plaintiffs have stable membership bases in these communities, which include identifiable members who participate in traditional organizational activities, such as volunteering for these organizations, and electing organizational leaders. ECF 13-3 ¶¶ 6–10; ECF 13-4 ¶¶ 6–9; ECF 13-5 ¶¶ 6–9.[4]  As such, Plaintiffs are representative organizations that advocate for a set of common interests shared with their memberships.[5]

Defendants assert that Plaintiffs' declarations are insufficient to demonstrate their standing, but the sole case Defendants cite, *Elec. Privacy Info. Ctr. v. U.S. Dep't of Commerce*, observed that detailed declarations like Plaintiffs are sufficient even at the summary judgment stage.  928 F.3d 95, 104 (D.C. Cir. 2019); *see also Sierra Club v. Fed. Energy Regulatory Comm'n*, 827 F.3d 59, 65–66 (D.C. Cir. 2016) (member declaration was sufficient to show associational standing).

### B.       Plaintiffs Have Identified Specific Members Affected by the July 23 Rule.

Plaintiffs' declarations specifically identify Doe members affected by the July 23 Rule. *See Am. Chemistry Council v. Dep't of Transp.*, 468 F.3d 810, 819 (D.C. Cir. 2006) (requiring

---

[4] *See also* Decl. of Javier Valdés, Ex. 6; Supp. Decl. of Juanita Valdez-Cox, Ex. 4; Supp. Decl. of Jonathan Fried, Ex. 5.
[5] District courts have recently recognized the associational standing of both MRNY and LUPE. *See, e.g., New York v. U.S. Dep't of Commerce*, 351 F. Supp. 3d 502, 605 (S.D.N.Y. 2019), *aff'd in part, rev'd in part and remanded sub nom. Dep't of Commerce v. New York*, 139 S. Ct. 2551 (2019) (MRNY); *La Unión del Pueblo Entero v. Ross*, 353 F. Supp. 3d 381, 391 (D. Md. 2018) (LUPE).

plaintiffs identify—not name—a "specific member" who will suffer injury). Although not strictly necessary, Plaintiffs submit with this reply declarations from a Doe member of each Plaintiff. *See* MRNY Doe Decl., Ex. 1; LUPE Doe Decl., Ex. 2; WeCount! Doe Decl. Ex. 3. These declarations are sufficient evidence of "identifiable [. . .] members for which the Court can evaluate the harm" required to show associational standing. *AILA*, 18 F. Supp. 2d at 51.

Defendants are wrong that Plaintiffs must *name* the affected members. Opp. 22. This Court has held that even at summary judgment, plaintiffs may rest on "an anonymous affidavit from at least one of its members" to demonstrate standing. *NAACP v. Trump*, 298 F. Supp. 3d 209, 225 (D.D.C. 2018). There, like here, the government argued that plaintiffs had to name names, but the court found that proposition "tenuous." *Id.* at n.10. *See also Young Am.'s Found. v. Gates*, 560 F. Supp. 39, 49 (D.D.C. 2008) ("[I]t is not clear that [associational standing] actually requires a name-specific identification."), *aff'd*, 573 F.3d 797 (D.C. Cir. 2009).[6] Defendants cite *Am. Chemistry Council*, *Chamber of Comm. v. EPA*, and *AILA*, but all three cases turn on *identifying* members, not naming them. *See Am. Chemistry Council*, 468 F.3d at 819–20; *Chamber of Comm.*, 642 F.3d 192, 199–200 (D.C. Cir. 2011); *AILA*, 18 F. Supp. 2d at 51. Nor must Plaintiffs show that they are "'constitutionally entitled' to withhold their connection to the organizational members." Opp. 22 (citing *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 459 (1958)). *NAACP* said nothing about whether anonymous but identified Doe members can show injury for associational standing. *See* 357 U.S. at 466.

### C.  Plaintiffs' Members Face a Substantial Risk of Injury.

The risk of injury to Plaintiffs' members is substantial and not speculative. Article III does not require that an injury be "certainly impending"—a "substantial risk" of injury is

---

[6] Doe members here have expressed fear of retaliation or selective enforcement given their immigration status if they do disclose their names. MRNY Doe Decl. ¶ 6; LUPE Doe Decl. ¶ 10; WeCount! Doe Decl. ¶ 8.

sufficient.  *New York Republican State Comm. v. SEC*, 927 F.3d 499, 504 (D.C. Cir. 2019).  *See also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (same); *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2566 (2019) ("the *predictable effect* of Government action on the decisions of third parties" was sufficient to establish standing) (emphasis added).

Defendants mistakenly rely on *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013), and *AILA* to argue that the injuries of Plaintiffs' members are premised on an attenuated chain of events.  Opp. 23–24.  *Clapper* held a chain of *five* separate events, 568 U.S. at 410, which depended on "a series of independent actors, including intelligence officials and Article III judges, [exercising] their independent judgment in a specific way," was too speculative.  *Attias v. Carefirst, Inc.*, 865 F.3d 620, 628 (D.C. Cir. 2017).  *AILA* found injury too speculative where members had to (1) seek entry into the United States; (2) without documentation; and (3) be found inadmissible and removed.  18 F.Supp.2d at 51.[7]  Here, Doe members have already (1) entered the U.S. (2) without inspection, and are thus subject to the new Rule.  *See* ECF 25-1. This is "not a situation in which plaintiffs have asserted mere "'some day' intentions" to engage in the conduct they claim will cause them injury."  *Navy Chaplaincy v. United States*, 697 F.3d 1171, 1175–6 (D.C. Cir. 2012) (citations omitted); *see also id.* (finding substantial risk of injury where plaintiffs would "probably" be subject to a challenged policy).

The risk to Plaintiffs' members is substantial.  *First*, Defendants have an explicit policy of prioritizing the removal of individuals, like the Doe members, who entered without inspection. Memorandum from John Kelly, Secretary of Homeland Security, Enforcement of the

---

[7] Defendants' authorities are distinguishable. *J. Roderick MacArthur Foundation v. FBI* found injury too speculative where future injury appeared "to have been self-inflicted." 102 F.3d 600, 606 (D.C. Cir. 1996). In *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, the plaintiffs alleged an "increased risk of death, physical injury, or property damage from *future car accidents* that [the agency's] rule will *fail to prevent*." 489 F.3d 1279, 1293 (D.C. Cir. 2007) (emphasis added). *Food & Water Watch, Inc. v. Vilsack* held that the challenged rule likely would be "*beneficial* rather than potentially harmful." 79 F. Supp. 3d 174, 193 (D.D.C. 2015), *aff'd*, 808 F.3d 905 (D.C. Cir. 2015).

Immigration Laws to Serve the National Interest 2 (Feb. 20, 2017), *available at* https://bit.ly/2miirQd (prioritizing for removal noncitizens who "have committed acts which constitute a chargeable offense," including entering without inspection).  The July Rule itself applies to *all* those subject to expedited removal's expansion.  And although the July 24 Memorandum "anticipate[s] that the July 23, 2019 designation will be primarily used . . . in the Criminal Alien Program and worksite enforcement contexts," it does not disavow use in others. ECF 25-1 at 2.  Defendants seek to distinguish *Susan B. Anthony List*, Opp. 24–25, but the Supreme Court has found a substantial risk of injury where the government does not disclaim an intent to prosecute.  *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 16 (2010) (allowing pre-enforcement review of criminal provisions because "[t]he Government has not argued to this Court that plaintiffs will not be prosecuted if they do what they say they wish to do.").

*Second*, by its own admission, DHS has increased interior enforcement actions.  *See, e.g.* Press Release, U.S. Immigration and Customs Enforcement, ICE worksite enforcement investigations in FY18 surge (Dec. 11, 2018), *available at* https://bit.ly/2QP0xY9 (noting fourfold increase in "worksite investigations"); *see also* Abigail Hauslohner, *ICE agents raid Miss. work sites, arrest 680 people in largest single-state immigration enforcement action in U.S. history*, Wash. Post, Aug. 7, 2019, https://wapo.st/2M6SljP; Guillermo Cantor, et al., Am. Imm. Council, *Changing Patterns of Interior Enforcement in the United States, 2016–2018* at 6–10 (2019), *available at* https://bit.ly/2MOMvUG (documenting increased enforcement activities).

*Third*, Plaintiffs' members reside in communities routinely targeted for enforcement, including workplace enforcement. ECF 13-3 ¶¶ 9–10 (describing enforcement affecting MRNY members); ECF 13-4 ¶¶ 9, 16 (describing enforcement affecting LUPE members); ECF 13-5 ¶

15

13 (describing enforcement affecting WeCount! members).

      *Fourth*, for individuals like LUPE Jane Doe, the risk is even more substantial.  She plans on applying affirmatively for asylum, which will bring her squarely to the attention of immigration authorities and the expansion of expedited removal.  LUPE Doe Decl. ¶¶ 5, 7.

## III.    The Rule Is Illegal.

### A.  The Rule Violates Notice and Comment Requirements.

      Defendants argue that Congress superseded notice-and-comment requirements through § 1225(b)(1)(A)(iii)(I) by providing that designations are "in the sole and unreviewable discretion" and "may be modified at any time."  Opp. 31.  But this language does not even mention the APA's rulemaking requirements, let alone expressly abrogate them, or set out any alternative procedures for making designations.  *See* Br. 17–18 (Congress's intent must be "explicit" to supersede notice-and-comment requirement).  Indeed, the two statutes can easily be harmonized. Congress simply specified that the agency may designate classes "at any time"—here, more than two decades after § 1225(b) was enacted—but also required that the designation be promulgated through notice-and-comment under the APA.

      Defendants fail to address the authorities cited in Plaintiffs' opening brief, and the case law they provide is not to the contrary.  *See* Br. 16–19 (citing cases).  Defendants cite *Envtl. Integrity Project v. EPA*, 177 F. Supp. 3d 36 (D.D.C. 2016), *aff'd sub nom. Envtl. Integrity Project v. EPA*, 864 F.3d 648 (D.C. Cir. 2017).  But, there, the Court held that FOIA requirements are not superseded by a statute that offered no specific "FOIA-displacing language," "specific information-disclosure procedures," or a "freestanding scheme that duplicates and hence presumably replaces FOIA."  *Id.* at 43–44 (quotations omitted).  *Nat'l Women, Infants, & Children Grocers Ass'n.* did not even consider whether the relevant statute

had superseded the APA, but instead found "good cause" to exempt the agency from notice-and-comment requirements where Congress had specified the use of interim final regulations and set a timeline for implementation; where there was a compelling need for the rule; and where the rule was explicitly temporary and subject to amendment upon receipt of comments.  416 F. Supp. 2d 92, 106–07 (D.D.C. 2006).

Defendants assert the Rule is not a legislative rule but a policy statement, claiming that it is simply a "notice" of DHS's intent to exercise its already existing authority to place an expanded class of individuals in expedited removal.  Opp. 32–33.[8]  But before the Rule was published, DHS lacked authority to subject noncitizens present for more than 14 days to expedited removal.  And after the Rule was published, millions of noncitizens lost their previous right to full removal proceedings, and are now subject to expedited removal as implemented in the Rule.  The Rule thus clearly "modifies or adds to a legal norm based on the agency's own authority," which authority in turn "flows from a congressional delegation to promulgate substantive rules . . . ."  *See Syncor Int'l Corp. v. Shalala*, 127 F.3d 90, 95 (D.C. Cir. 1997) (emphasis omitted).

Defendants next claim "good cause" for bypassing notice and comment, based solely on speculation that any delay in implementation would cause "a surge in migration across the southern border" and "serious harm." Opp. 33 (citing 84 Fed. Reg. at 35,413).  But Defendants' own actions undermine their argument: if a "delay in applications," Opp. 35, would trigger a catastrophic surge, Defendants would not have announced the expansion on February 20, 2017 only to publish the notice more than two years later on July 23, 2019, and then delay implementation by nearly six weeks.

---

[8] Defendants also claim that the Rule is a "rule[] of agency organization, procedure or practice," but that exception is limited to rules that "do not themselves alter the rights or interests of parties . . . ."  Opp. 33 n.10.  Plainly, the application of expedited removal to Plaintiffs' members alters their rights.

Moreover, good cause must be supported by "factual findings," not "unsupported

assertion" or evidence "too scant to establish a[n]. . . emergency." *Sorenson v. FCC*, 755 F.3d

702, 707 (D.C. Cir. 2014); *see also Council of S. Mountains, Inc. v. Donovan*, 653 F.2d 573, 581

(D.C. Cir. 1981) (good cause shown where rule was of "life-saving importance").  Defendants

cite *nothing* in the record to support the notion that large numbers of migrants would suddenly

rush across the border before a final rule could be promulgated based solely out of a desire to

evade the expansion of expedited removal.  Opp. 34–35.[9]  In fact, the few record citations

Defendants rely on do not even support their assertions.  *Id.* (citing AR2277 (noting "outdated

laws"—not policy shifts—create a "pull factor"); AR 663 (noting only that DHS "faces a

challenging task" due to "policy shifts related to recent EOs"); AR705 (noting that increase in

asylum and credible fear cases has presented DHS with enforcement challenges); AR4319 (a

seemingly incorrect, unrelated citation); AR3510 (noting circumstances including "surges" have

decreased available detention beds)); *see also* AR155–77 (describing migration trends over six

years, without purporting to identify a single surge in response to a policy change); AR118

(same, for the past two years).

Defendants cite *EBSC v. Trump*, 354 F. Supp. 3d 1094 (N.D. Cal. 2018), but do not

mention the more recent decision by that same court, *EBSC v. Barr*, 385 F. Supp. 3d 922 (N.D.

Cal. 2019), which rejected the government's good cause argument on the same evidence because

of Defendants "failure to produce more robust objective evidence to link a similar announcement

and [increased] border crossings or claims for relief" beyond a single "progressively more stale

article."  *See id.* at 950.  Here, Defendants' failure is more explicit:  They have not identified a

---

[9] Defendants' scenario is fanciful.  It imagines a noncitizen who is informed enough about agency policy-making to exploit the delay caused by notice-and-comment procedures, but not informed enough to know that—because the Rule expands expedited removal throughout the United States and includes all those present for less than two years—their entry will not even protect them from application of the Rule.

single piece of evidence that could link notice and comment to a surge.

Defendants repackage their statutory and good cause arguments to assert that notice and comment is impracticable, Opp. 33, but their arguments are no more compelling in that context. Defendants' reliance on language in 8 C.F.R. § 253.3(b)(ii) providing that "designation shall become effectively upon issuance" is unavailing, as a regulation cannot trump Congressionally mandated procedures.

## B. The Rule Violates the INA and Due Process.

Defendants' attacks on Plaintiffs' statutory and due process claims suffer from the same defect as their jurisdictional positions. They fail to distinguish between *the manner* in which Defendants implement expedited removal for people in the interior, and Defendants' authority to apply expedited removal to such individuals if they choose. Plaintiffs' claims for procedural fairness under 8 U.S.C. § 1225 and Due Process all go to the former.

### 1. AILA Does Not Foreclose Plaintiffs' Claims.

Defendants make the sweeping assertion that the *AILA* district court decision, affirmed by the Circuit "substantially for the [same] reasons," *AILA*, 199 F.3d at 1357, forecloses Plaintiffs' claims. Opp. 38–41. Defendants read those decisions far too broadly.

Apart from the organizational plaintiffs' First Amendment claims, the merits issues in *AILA* were limited to only two individual noncitizen plaintiffs deemed inadmissible at the border. *See* 18 F. Supp. 2d at 45, 47, 60. In rejecting the two individual plaintiffs' challenges to the implementing regulations (which applied only at ports of entry), the district court focused on their status as noncitizens seeking initial entry. As to the constitutional claims, the district court's view was that such noncitizens enjoyed relatively minimal due process protection. *Id.* at 58–60. The court relied heavily on cases involving noncitizens outside the physical borders of

the United States, *see, e.g.*, *Kleindienst v. Mandel*, 408 U.S. 753, 756, 762 (1972); *Johnson v. Eisentrager*, 339 U.S. 763, 770 (1950), or those (like the two individual plaintiffs) who were stopped at the border or on the seas before they could enter the country, *see, e.g.*, *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 208 (1953) *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 559 (1950); *Sale v. Haitian Ctrs. Council*, 509 U.S. 155, 175 (1993); *Ukrainian–American Bar Ass'n v. Baker*, 893 F.2d 1374, 1382 (D.C. Cir. 1990).

Whatever the merits of that analysis, Plaintiffs' members here stand in a fundamentally different position.  They have *already* entered the United States.  The Supreme Court and numerous lower courts have recognized that the Due Process Clause applies to them, regardless of their lack of lawful status.  *See, e.g.*, *Zadvydas*, 533 U.S. at 693 ("[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.") (citation omitted); *Mathews v. Diaz*, 426 U.S. 67, 77 (1976) (stressing that the Fifth Amendment applies even to those "whose presence in this country is unlawful, involuntary, or transitory") (internal citations omitted); *Bayo v. Napolitano*, 593 F.3d 495, 502 (7th Cir. 2010) (en banc) (explaining that once the noncitizen "crossed the border," he "became entitled to certain constitutional rights, including the right to due process"); *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008) (similar).

Neither the *AILA* district court nor the D.C. Circuit could have addressed, much less rejected, the legal claims of noncitizens who had entered the country.  Expedited removal did not even apply to them at the time.  Indeed, the *AILA* district court expressly distinguished noncitizens "with community ties to the U.S." and others who had lived here for longer periods. *See* 18 F. Supp. 2d at 59–60 & n.17.

Similarly, the *AILA* district court examined plaintiffs' statutory and regulatory challenges through the lens of the only plaintiffs before it—noncitizen tourist visa-holders who were seeking initial entry at the border. *See id.* at 52–53.  In upholding the limited procedures provided under the then-existing expedited removal system, the Court emphasized the specific factual context of the case.  For instance, in approving the government's denial of "consultation during the period between secondary inspection and the credible fear interview," *id.* at 54, the district court observed that DHS processes "ten million" individuals at ports of entry every year, and that DHS lacks capacity to afford them all a right to consultation.  *Id.* at 54–55; *see also id.* at 55 (upholding denial of access to counsel during secondary inspection as "reasonable" under circumstances).  Neither concern is applicable in the interior.  The Court also did not address the lawfulness of implementing the statute with respect to individuals who have accrued stronger connections to this country due to entry and residence.

Moreover, *AILA* never addressed the specific statutory counsel arguments that Plaintiffs raise here, which are based on the APA's counsel provision, 5 U.S.C. § 555(b), and a separate provision in the immigration statute that guarantees the right to representation "in any removal proceeding before an immigration judge," 8 U.S.C. § 1362.  *See* Br. 38–41.

## 2.  Defendants' Other Attempts to Avoid Addressing Plaintiffs' Claims Are Meritless.

First, Defendants mischaracterize many of Plaintiffs' claims as challenges to "unwritten policies or practices" that *AILA* bars.  Opp. 40.  But Plaintiffs' claims directly attack the July 23 Rule (and now the July 24 policy directive) and the lack of procedural safeguards they afford noncitizens newly subject to expedited removal.  Br. 1–2.  The evidence and documentation concerning widespread defects in the existing expedited removal system supports Plaintiffs' core contention, which is that expanding this problematic system to noncitizens who have lived in the

United States for years, far from the border, will result in numerous erroneous removals.  Br. 21–36.  The risk of error is even more likely because noncitizens present for longer periods of time are likely to present more complex issues than those arrested close to initial entry.  *See* Br. 24–26.

Second, Defendants claim that Plaintiffs must meet the heightened standard for facial challenges set forth in *United States v. Salerno*, 481 U.S. 739 (1987).  Opp. 42, 44.  But Defendants apparently cannot decide whether Plaintiffs' claims are truly "facial."  *See* Opp. 42 ("Plaintiffs assert a *facial challenge* to section 1225(b)(1) *as applied* to all aliens within its reach under the July 23 Notice." (emphases added)).  What is more, "neither the Supreme Court nor the D.C. Circuit has consistently utilized the *Salerno* standard to review statutory challenges to administrative rules," *Mineral Policy Ctr. v. Norton*, 292 F. Supp. 2d 30, 39-40 (D.D.C. 2003), and there is good reason to doubt whether *Salerno*'s skepticism of facial challenges applies when Congress has expressly provided for review of facial attacks on agency action.  8 U.S.C. 1252(e)(3)(A).  And even if *Salerno* did apply, it would not change the relevant inquiry for Plaintiffs' statutory and due process claims.  The core question, Defendants agree, is the risk of erroneous deprivation in "the generality of cases."  *Mathews*, 424 U.S. at 344; Opp. 47–48.  If the risk of error is sufficiently grave across the set of relevant cases as a whole—i.e., all noncitizens subject to expedited removal under the July 23 Rule—the application of those flawed procedures is unconstitutional in *every* case.

Third, Defendants assert that Plaintiffs' members, as unlawful entrants, are not entitled to any constitutional protections with respect to their removal.  Opp. 36-37, 42-43.  Defendants' position is a remarkable departure from Supreme Court precedent, which for more than a century has recognized that once an individual has entered the United States, even unlawfully, she cannot be removed without due process.  *See Yamataya v. Fisher*, 189 U.S. 86, 99–101 (1903).

22

Defendants misread *Yamataya* as involving a lawfully admitted person, Opp. 46–47, but the opinion makes clear that the petitioner there "'had surreptitiously, clandestinely, unlawfully, and without any authority come into the United States,'" *Yamataya*, 189 U.S. at 87 (quoting government's habeas return). She had only resided in the country for *four days*, yet the Supreme Court held she was entitled to due process, foreclosing any contention that Plaintiffs' members here lack a protected interest in avoiding removal. *See id.* at 87.[10]

Defendants also suggest that even if unlawful entrants have due process rights, those who have lived here for two years or less do not enjoy due process protection. Opp. 42–43. But they cite no authority for that position, whereas the D.C. Circuit and other circuits have applied the Due Process Clause rule in cases involving noncitizens who have lived here for short periods of time. *See, e.g.*, *Maldonado-Perez v. INS*, 865 F.2d 328, 329–30, 332 (D.C. Cir. 1989) (Due Process Clause applies to noncitizen apprehended one day after unlawful entry); *United States v. Raya-Vaca*, 771 F.3d 1195, 1199 (9th Cir. 2014) (Due Process Clause protected noncitizen apprehended one day after unlawful entry); *Zheng v. Mukasey*, 552 F.3d 277, 279, 286 (2d Cir. 2009) (finding denial of due process for individual apprehended one week after entry); *United States v. Campos-Asencio*, 822 F.2d 506, 507, 509 (5th Cir. 1987) (due process for noncitizen apprehended same day as unlawful reentry).

In contrast, Defendants cite a number of inapposite cases for the broad view that noncitizens are entitled only to the procedures Congress has provided. Opp. 36-37, 41-46. Some involve noncitizens *outside* the United States seeking constitutional protection. *See United States v. Verdugo-Urquidez*, 494 U.S. 259, 262, 271 (1990) (noncitizen seeking Fourth Amendment protection for events that took place in Mexico). Others involve noncitizens

---

[10] Defendants' position also breaks from their own prior litigation stances. *See, e.g.*, Reply Brief for the Petitioners, *Clark v. Martinez*, 543 U.S. 371 (2005) (Nos. 03-878), 2004 WL 2006590, at *6-7 (recognizing "the fundamental distinction . . . in the Constitution between aliens stopped at the border and those who have entered").

stopped at the border before entering.  *See, e.g.*, *Knauff*, 338 U.S. at 539-40; *Ukrainian-American Bar Assoc.*, 893 F.2d at 1376.  Still more actually undermine their position.  *See Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d 983, 994-97 (9th Cir. 2012) (recognizing Due Process applied to noncitizen outside United States who had previously lived in country on visa); *Martinez-Aguero v. Gonzalez*, 459 F.3d 618, 620-21, 625 (5th Cir. 2006) (addressing *Fourth* Amendment and agreeing it applied when noncitizen's main connection to United States was regularly crossing border to accompany aunt to Social Security office).[11]  Defendants also cite stray phrases from *Dia v. Ashcroft*, 353 F.3d 228 (3d Cir. 2003) (en banc), but there the Third Circuit plainly held that the unlawful entrant petitioner was entitled to due process.  *Id*. at 238-39, 242-43.  And *Landon v. Plasencia*, 459 U.S. 21 (1982) never held that unlawful entrants lacked Due Process protection; indeed, Defendants ignore *Plasencia*'s core holding that Due Process applied to a noncitizen stopped at the border.[12]  *Id.* at 33-34.

Defendants fundamentally contend that Congress's decision to allow application of expedited removal to noncitizens who have entered and lived here for up to two years is dispositive of their due process rights.  But the Constitution, not Congress, determines the applicability of the Due Process Clause.  *See Rafeedie v. INS*, 880 F.2d 506, 519 (D.C. Cir. 1989) (recognizing that Supreme Court had rejected notion that "Congress could unilaterally determine what satisfies the constitutional requirement of due process"); *Den ex dem. Murray v. Hoboken*

---

[11] Defendants' remaining cases are distinguishable.  For example, *Zakonaite v. Wolf*, 226 U.S. 272, 2758 (1912) addressed whether a noncitizen facing deportation was entitled to a trial by jury of her deportability.  To the extent that *Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State, Bureau of Consular Affairs*, 104 F.3d 1349, 1354 (D.C. Cir. 1997), addressed the constitutional rights of noncitizens at all, it too involved noncitizens outside the United States.  And *Osorio-Martinez v. U.S. Att'y Gen.*, 893 F.3d 153, 168 (3d Cir. 2018), addressed the scope of the Suspension Clause, not Due Process, and in any event held that the noncitizens there did have Suspension Clause rights.

[12] Defendants misleadingly quote *Barajas-Alvarado* to claim "Congress could have created an expedited removal scheme based entirely on the [Secretary's] discretion."  Opp. 36, 42 (quoting *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1085 (9th Cir. 2011)).  But the Ninth Circuit was addressing expedited removal as applied to a person who was "removed . . . through the San Ysidro Port of Entry," 655 F.3d at 1080, akin to the noncitizens in *AILA*.  In fact, *Barajas* expressly distinguishes between the noncitizens then subject to expedited removal, and noncitizens "who had been present in the United States" before deportation, like Plaintiffs' members here.  *Id.* at 1085-86.

*Land & Imp. Co.*, 59 U.S. 272, 276 (1855) (Due Process Clause "is a restraint on the legislative

as well as on the executive and judicial powers of the government, and cannot be so construed as

to leave congress free to make any process 'due process of law,' by its mere will").

### 3. The July 23 Rule's Failure to Provide Sufficient Safeguards to Guard Against Erroneous Removal Violates the INA, as Read to Avoid Constitutional Doubt.

Defendants' justifications for their error-prone system are unpersuasive. They begin by

mischaracterizing Plaintiffs' constitutional avoidance argument. *See* Opp. 44-45. Plaintiffs

agree that the statute permits application to noncitizens who have continuously resided in this

country for up to two years. But Congress must have envisioned that if the government takes the

drastic step of expanding expedited removal to the greatest allowable extent, it would implement

procedures to guard against erroneous removals. "When Congress directs an agency to establish

a procedure, . . . it can be assumed that Congress intends that procedure to be a fair one."

*Marincas v. Lewis*, 92 F.3d 195, 199-200, 203-04 (3d Cir. 1996); *see also Augustin v. Sava*, 735

F.2d 32, 37-38 (2d Cir. 1984) (reading right to interpreter into asylum application process

because "[t]o erect barriers by requiring comprehension of English would frustrate . . . the intent

of Congress"). Defendants identify no language in § 1225 to the contrary. And their own July

24 Memorandum adopts new safeguards for individuals subject to the new Rule, presumably out

of the recognition that nothing in the statute forecloses them from instituting protections

(however limited) to guard against erroneous removals.

As to *Mathews*, Defendants make scattershot assertions about the alleged simplicity of

the determinations immigration officers must make, which they say obviates the need for more

protections. Opp. 48-49. Yet as Plaintiffs' evidence shows, CBP officers regularly err when

making these supposedly "simple" determinations. Br. 9 (citing 2005 USCIRF study finding

15% error rate in referral for credible fear interview when noncitizen expressed fear of return);

10 (same study found immigration officers' summary of statements "often inaccurate and nearly always unverifiable"); *see generally* Br. 24-32.  Application of these flawed procedures to the interior is likely to be even more error-prone, since immigration officers must now make determinations of continuous residence, and hear noncitizens' claims that they are present lawfully or eligible for various forms of immigration relief.  Br. 24-30.[13]  Defendants invoke the potential of judicial review of expedited removal orders as a substitute for meaningful administrative procedures, Opp. 47, but the argument rings hollow given their apparent position that most of the relevant errors—such as the failure to refer a noncitizen for credible fear determinations, errors in determining continuous residence, or claims of procedural violations in making inadmissibility determinations—are, in their view, not remediable in habeas.

Defendants next contend that § 1225(b) precludes DHS from bearing the burden of showing that the noncitizen is not admitted or paroled, and of showing inadmissibility.  Opp. 49-50.  But the statutes they cite have no such language.  Section 1225(b)(1)(A)(i) only directs that the immigration officer make an inadmissibility determination, and says nothing about who bears the burden of showing admissibility or inadmissibility.  Section 1225(b)(2)(A) addresses the placement of certain applicants for admission in full removal proceedings, and therefore says nothing about expedited removal.  And § 1229a(c)(2)(A) is similarly inapposite because it applies to full removal proceedings.[14]

Defendants suggest that their July 24 Memorandum will ensure "robust procedures" in

---

[13] Defendants twice rely on *United States v. Peralta-Sanchez*, Opp. 48, 50, although the Ninth Circuit withdrew that opinion on rehearing, after numerous *amici* raised concerns regarding expedited removal similar to those Plaintiffs raise here. 847 F.3d 1124, 1137 (9th Cir.), *opinion withdrawn on grant of reh'g*, 868 F.3d 852 (9th Cir. 2017). Defendants reliance on *Walters v. Nat'l Ass'n of Radiation Survivors* is misplaced:  the veteran's benefits procedure at issue was "designed to function throughout with a high degree of informality and solicitude" for the claimant, 473 U.S. 305, 310 (1985), the Court's description of which contrasts starkly with those here. See *id.* at 309-13.

[14] Defendants also mischaracterize the withdrawal of an application for admission as simply another means of effectuating expedited removal.  Opp. 48-49.  But withdrawal relief critically allows the noncitizen to avoid a removal order and its attendant consequences.  *See* Br. 29-30.

expedited removal proceedings, Opp. 48, but it does not cure the problems Plaintiffs have identified. *See* Br. 24-30.[15]  The memorandum describes itself as "internal guidance" couched largely in terms of what ICE officers *may*, but not must, consider when enforcing expanded expedited removal.  *See, e.g.*, ECF 25-1 at 2 (noting that factors such as mental competency and relief eligibility are "potentially relevant" to placement in expedited removal proceedings, but not cabining officers' "broad discretion" to make those decisions); *id.* (noting types of evidence that "may demonstrate" continuous presence, but not indicating what evidence will "show to the satisfaction" of the immigration officer that person has been continuously present).

The memorandum also fails to address key factors impacting the high risk of erroneous deprivation of Plaintiffs' rights.  *See id.* (noting that burden remains on noncitizens and not addressing, *inter alia*, access to counsel, right to confront adverse evidence, access to sufficient interpreters, truncated review of complex fear and status claims, and rights-advisals, including right to seek withdrawal application for admission).  Nor is there any reason to believe the memorandum counteracts the widespread inadequate interviewing practices, erroneous information in expedited removal paperwork, or coercion that is regularly a part of the current expedited removal process, when regulations and prior internal guidance have not checked these abuses.  *See* Br. 7-11.  To the extent that the memorandum provides one additional layer administrative review, such oversight is expressly limited to "initial implementation," ECF 25-1 at 3, and provides no long-term check on systemic due process violations.  It references an opportunity to contact someone to gather evidence of continuous presence, but limits such opportunity to an undefined "brief" time.  Moreover, for individuals held in detention without access to counsel and often far from their homes, there will be essentially no opportunity at all.

---

[15] The memo is directed to "ICE employees" and so its applicability to CBP officers—who also administer expedited removal—is not clear.  ECF 25-1 at 1.

If anything, Defendants' July 24 Memorandum only supports Plaintiffs' claims because it shows Defendants can implement procedures not explicitly delineated in statute. Defendants must implement procedures that are consistent with constitutional requirements.

Finally, Defendants claim that the private interests here are weak because Congress can define the contours of individual due process rights, and has done so in the expedited removal statute. But again, the Constitution, not Congress, determines the applicability of the Due Process Clause. Defendants' invocation of their "sovereign prerogatives," Opp. 50-51, rings hollow in light of the grave rights at stake, and ignores that their prerogatives "[are] subject to important constitutional limitations." *Zadvydas*, 533 U.S. at 695.

## C. The Rule is Arbitrary and Capricious in Violation of the APA.

The Rule's implementation of the expedited removal statute to the expanded class lacks adequate procedures, and is arbitrary and capricious. Defendants incorrectly suggest that Plaintiffs challenge a failure to assess the constitutionality of Section 1225(b)(1)(A)(iii). Opp. 52. This is untrue: Plaintiffs challenge Defendants' arbitrary and capricious decision to provide inadequate procedural safeguards when expanding the application of expedited removal. While Section 1225(b)(1)(A)(iii) provides authority to expand expedited removal, it did not—and could not—require Defendants to do so without fair procedures.

Defendants thus fail to address Plaintiffs' actual claim: that Defendants "entirely failed to consider an important aspect of the problem"—i.e., the perils of expanding expedited removal without adequate procedures—and ignored the voluminous evidence of the systemic due process violations in the existing expedited removal process. *Genuine Parts Co. v. EPA*, 890 F.3d 304, 307 (D.C. Cir. 2018).

Indeed, it is Defendants who have "amass[ed] a cherry-picked, self-serving record for

litigation purposes" that is plainly incomplete.  Opp. 52.  It is astonishing that an over-5,000 page administrative record does not include any studies of the deficiencies of the expedited removal process—not even two widely-cited congressionally-authorized studies. *See* 2005 and 2016 U.S. Comm'n on Int'l Religious Freedom Reports on Expedited Removal, ECF 13-30, 13-31.

Even if the administrative record were complete, the Court should still consider much of Plaintiffs' allegedly extra-record evidence as it demonstrates how Defendants failed to "examine all relevant factors" when making their designation decision. *See Nat'l Min. Ass'n v. Jackson*, 856 F. Supp. 2d 150, 156 (D.D.C. 2012).  Prior to the Rule, Plaintiffs' counsel provided Defendants with extensive evidence of problems in the expedited removal system. *See* ECF 13-27 at 2-13 (May 1, 2019 letter from Plaintiffs' counsel providing 30 supporting exhibits, including ECF 13-24 to 13-26; 13-30 to 13-34; 13-37; 13-41); *id.* at 14-15 (acknowledging receipt by Defendant McAleenan, dated July 9, 2019, two weeks prior to the Rule). *See also American Wild Horse Preservation Campaign v. Salazar*, 859 F. Supp. 2d 33, 43 n.6 (D.D.C. 2012) (considering extra-record expert reports that were submitted to the agency but ignored). This omission is especially egregious where the reasons that Defendants have provided for enacting the Rule are based on inaccurate or misleading data. *See, e.g.*, Br. 20-21, 32-33 (discussing lack of evidentiary basis for claims of "surge" or "crisis" at the border); Br. 33-34 & n.11 (discussing unexplained flaws in data cited regarding interior encounters); Br. 7-11 (discussing *lack* of protections in expedited removal proceedings).[16]  The failure to include any of this readily-available evidence in the administrative record demonstrates that Defendants failed to consider a critically relevant factor.

### D.  The Rule Violates the Counsel Provisions of the APA and INA.

---

[16] This Court should also consider the facts set forth in government documents and public records that are subject to judicial notice. *See* ECF 13-23 to 13:26; 13-28 to 13-31; 13-40; 13-41; *see also Al-Aulaqi v. Panetta*, 35 F. Supp. 3d 56, 67-68 (D.D.C. 2014) (applying Federal Rule of Evidence Rule 201(b)(2)).

Defendants do not dispute two key points:  First, expedited removal involves proceedings where "a person is compelled to appear in person before an agency . . . ." within the meaning of 5 U.S.C. § 555(b); and second, Section 1225 contains no proscription like the one in 8 U.S.C. § 1229a(a)(3), which provides that removal proceedings will be the "sole and exclusive" mechanism for deciding removal.

Lacking a clear provision that displaces the APA, Defendants resort to strained readings of statutory text and case law.  *First*, they rely on the provision addressing "[i]nformation about [credible fear] interviews," 8 U.S.C. § 1225(b)(1)(B)(iv), which gives asylum-seekers the ability to "consult with a person or persons of the alien's choosing prior to the interview or any review thereof."  This limited provision, Defendants say, displaces the APA counsel right in all other phases of expedited removal.  Opp. 53-54.  To the contrary, Section 1225(b)(1)(B)(iv) confers rights beyond the basic safeguards in 5 U.S.C. § 555: an affirmative right to information advisals about the credible fear process, and the right to consult with *any* person, not just a lawyer.  But it only applies in a specific phase of the process—before a credible fear interview.  It would be bizarre to interpret a more fulsome protection in one phase of the process to dislodge lesser procedural rights in others.  It would also reverse the relevant inquiry: the presumption is that the counsel right applies, unless expressly stated otherwise.  *See* 5 U.S.C. § 559.

*Second*, Defendants claim that *Marcello* and *Ardestani* stand for the sweeping proposition that the INA generally displaces the APA in all respects, "irrespective of isolated statutory language."  Opp. 55.  But that cannot be squared with the Court's heavy reliance on statutory text in both.  *See Ardestani v. INS*, 502 U.S. 129, 134 (1991) ("*Marcello* rests *in large part* on the statute's prescription that the INA 'shall be the *sole and exclusive* procedure for determining the deportability of an alien under this section'") (citing then-8 U.S.C. § 1252(b)) (first emphasis

added).  Defendants rely on *United States v. Quinteros*, but that case cites no legislative history

for its broad view that Congress enacted expedited removal "against the background of the

holdings in *Marcello* and *Ardestani*, which had established the general proposition that the APA

did not apply to immigration proceedings."  No. 3:18-CR-00031-001, 2019 WL 3220576, at *10

(W.D. Va. July 17, 2019).  The opposite inference is more plausible—after the Supreme Court

identified the critical APA-displacing text in the prior version of INA, Congress included similar

language governing regular removal, yet omitted it from Section 1225.[17]

Finally, on the counsel right in the IJ review process, Defendants argue that expedited

removal proceedings are not "removal proceeding[s] before an immigration judge" in the plain

meaning of 8 U.S.C. § 1362.  Opp. 55-56.  Yet Defendants' brief repeatedly describes the

process as "expedited removal proceedings," *id.* at 30, 48-49, 56, 59-60, and they cannot explain

why Section 1362, notwithstanding its expansive use of the word "any," excludes phases of

expedited removal that occur before an immigration judge.[18]  *See, e.g.*, *Ali v. Fed. Bureau of*

*Prisons*, 552 U.S. 214, 220 (2008) (concluding that word "any" modifying "'other law

enforcement officer' is most naturally read to mean law enforcement officers of whatever kind").

Moreover, 8 U.S.C. § 1229a, which governs regular removal proceedings, already includes its

own counsel guarantee.  Opp. 55-56 n.12 (citing 8 U.S.C. § 1229a(1)(E)); *id.* at 53 (citing 8

U.S.C. § 1229a(b)(4)(A)).  If Section 1362 were narrowly limited to regular "removal

proceedings," that would render the statute superfluous.  *See Hibbs v. Winn*, 542 U.S. 88, 101

(2004) (statutes should not be read to be "inoperative or superfluous, void or insignificant").[19]

---

[17] Defendants seek support in the counsel right specified in administrative and regular removal proceedings, but those provisions include APA-displacing text, and provide greater safeguards than those required by 5 U.S.C. § 555.
[18] *Barajas-Alvarado*, on which Defendants again rely, never addressed whether the immigration statute guaranteed a counsel right in immigration judge review of credible fear determinations.  *See* 655 F.3d at 1085.
[19] The history of Sections 1362 and 1229a(b)(4)(B) further shows that they perform separate work.  The precursors to both provisions were enacted in 1952.  The precursor to Section 1362 was INA § 292, which established a right to counsel of one's choice "[i]n any exclusion or deportation proceedings."  Immigration and Nationality Act of 1952,

**IV.     The Remaining Factors Weigh in Favor Issuing an Injunction.**

Nowhere do Defendants explain why—having waited over two and a half years to expand expedited removal—it is necessary to do so before this Court determines the legality of the policy.  Indeed, this extended delay (coupled with the additional 40 day delay) entirely undermines Defendants' single claimed harm from an injunction: that expanding expedited removal procedures is required now.

On the other hand, Plaintiffs have demonstrated it is sufficiently "likely" they will be subject to expedited removal.  *See Wis. Gas Co. v. Fed. Energy Regulatory Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985).  Plaintiffs have provided "proof indicating that the harm is certain to occur in the near future."  *Id.*; *cf. Mills v. Dist. of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009) (finding irreparable injury where defendant was "not currently imposing" the challenged action, "but [had] done so more than once, and . . . expressed . . . intent to continue to use the program until a judge stops her").

Defendants claim that the harm to Plaintiffs is too speculative, while also claiming that they need to implement the new expedited removal procedures immediately to "remove the thousands of aliens arriving in this country illegally and absconding into the interior on a daily basis."  Opp. 56.  Defendants' position is illogical; they cannot implement a wide-ranging and aggressive policy but nevertheless claim that individuals subject to that policy are not at risk.

Moreover, the cases relied upon by Defendants to assert that Plaintiffs' harm is too speculative are distinguishable: they address the type of "mere injur[y] . . . in terms of money, time and energy necessarily expended" that could be addressed with "adequate compensatory or other corrective relief . . . available at a later date."  *Wis. Gas Co.*, 758 F.2d at 674 (internal

---

Pub. L. No. 82-414 § 292, 66 Stat. 163, 208-09, 235 (June 27, 1952).  The precursor to Section 1229a(b)(4)(A) was INA § 242(b)(2), which applied *only* to deportation proceedings.  *Id.* at 209-10.  Thus. Section 1362 has long performed labor distinct from, and broader than, other counsel provisions in the INA.

quotation marks omitted).  *See Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290,

298 (D.C. Cir. 2006) (failure to promote); *Power Mobility Coal. v. Leavitt*, 404 F. Supp. 2d 190,

204 (D.D.C. 2005) (economic injury).

   In contrast, deportation without due process is an irreparable injury, particularly for those

who have family and community connections, such as Plaintiffs' members.  *See Bridges v.*

*Wixon*, 326 U.S. 135, 164 (1945) (deportation "may result in poverty, persecution, and even

death."); *Plasencia*, 459 U.S. at 34 (describing "weighty" possibility of losing "the right to rejoin

[one's] immediate family, a right that ranks high among the interests of the individual").  For

individuals subject to the Rule—particularly those who are seeking asylum and fear persecution,

torture, or even death upon deportation—"adequate" relief may not be "available at a later date."

*See Wis. Gas Co.*, 759 F.2d at 674 (internal quotation marks omitted).

   In addition, "the alleged harm will directly result from the action which the movant seeks

to enjoin."  *Id.*  Plaintiffs' members are harmed as a direct result of the new Rule.  Plaintiffs and

their members are injured by the deprivation of the opportunity to provide notice and comment

*and* their members will be harmed by implementation.  *See* ECF 13-3 ¶¶6-18, 21-22; ECF 13-4

¶¶6-16, 21; ECF 13-5 ¶¶6-13, 18.[20]

   Defendants assert an interest in border administration and preventing illegal entry.  Opp.

56-57.  But those interests have long been served by their longstanding application of expedited

removal to individuals apprehended with 100 miles of the border who were present for less than

two weeks.  The *expansion* of expedited removal under the July 23 Rule bears little apparent

relation to those goals.  On the other side of the balance, the public interest is served by

---

[20] Defendants assert that a procedural violation is not a cognizable injury. Opp. 58-59 (citing *Am. Ass'n for Homecare v. Leavitt*, 2008 WL 2580217, *5 (D.D.C. June 30, 2008)).  But in *Leavitt*, unlike here, the plaintiffs failed to provide any evidence of injury, thus, the court found the agency's allegedly unlawful implementation of a bidding program was "pure speculation."  2008 WL 2580217, at *5.

"preventing [noncitizens] from being wrongfully removed, particularly to countries where they are likely to face substantial harm." *Nken v. Holder*, 556 U.S. 418, 436 (2009).

## V.      The Rule Should Be Enjoined In Its Entirety.

Defendants claim that nationwide relief goes beyond the relief the Plaintiffs specifically require.  Opp. 59-60.  But it is settled Circuit law that "[w]hen a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed." *Nat'l Min. Ass'n v. U.S. Army Corps of Engineers*, 145 F.3d 1399, 1409 (D.C. Cir. 1998) (internal quotation marks omitted); *Sierra Club v. Van Antwerp*, 719 F. Supp. 2d 77, 78 (D.D.C. 2010) (same); *Grace v. Whitaker*, 344 F. Supp. 3d 96, 144 (D.D.C. 2018) (noting in (e)(3) action Defendants' failure to cite any "authority to support the proposition that a Court may declare an action unlawful but have no power to prevent that action from violating the rights of the very people it affects").  Defendants do not provide a reason to depart from the presumptive remedy here.

Defendants broadly say that "the INA itself prohibits the injunction Plaintiffs seek." Opp. 59-60.  Yet none of their cited statutes do so.  Section 1252(e)(1)(A) limits courts' ability to order equitable relief in certain cases, but it does not apply here.  Plaintiffs' action is a "[c]hallenge[] on [the] validity of the system" brought under § 1252(e)(3), not an "action pertaining to an order to exclude an alien in accordance with section 1225(b)(1)."  8 U.S.C. § 1252(e)(1)(A).  Even if a § 1252(e)(3) challenge were an "action pertaining to an order to exclude an alien," § 1252(e)(1)(A)'s limitation still would not apply.  That provision forecloses equitable relief only if the action is not "specifically authorized in a subsequent paragraph" in subsection (e).  Section 1252(e)(3) specifically authorizes the action here, so the condition set out in § 1252(e)(1)(A) is met.  Indeed, Defendants' position cannot be reconciled with the district

34

court's grant of preliminary injunctive relief in *AILA v. Reno*, on which they so heavily rely.  *See AILA v. Reno*, 1997 WL 161944, at *1, 4 (D.D.C. Mar. 31, 1997), *vacated as moot*, 1997 WL 404723 (D.C. Cir. June 18, 1997).

Likewise, Defendants' citation to § 1252(f)(1), which they read as granting "the only authority for such relief," is unavailing.  Opp. 60.  That provision only bars "jurisdiction or authority to enjoin or restrain *the operation of* part IV of this subchapter . . . ."  8 U.S.C. § 1252(f)(1) (emphasis added).  As numerous courts have found—including this Court in another § 1252(e)(3) action—the statute does not apply to actions that "seek to enjoin the government's *violation of those provisions* by the implementation of [] unlawful . . . policies."  *Grace*, 344 F. Supp. 3d at 143 (emphasis added); *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 184 (D.D.C. 2015) (§ 1252(f) does not limit a court's ability to "enjoin[] conduct that allegedly violates the [INA]").

## CONCLUSION

For the foregoing reasons, and the reasons set forth in Plaintiffs' opening brief, Plaintiffs' Motion for a Preliminary Injunction should be granted.

Dated: September 3, 2019

Trina Realmuto**
Kristin Macleod-Ball**
American Immigration Council
1318 Beacon Street, Suite 18
Brookline, MA 02446
(857) 305-3600

Karolina J. Walters (D.C. Bar No. 1049113)
American Immigration Council
1331 G Street, NW, Suite 200
Washington, D.C. 20005
(202) 507-7520

Jonathan K. Youngwood**
Susannah S. Geltman**
Joshua Polster**
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
(212) 455-2000

Adrienne V. Baxley (D.C. Bar No.
1044750)****
Simpson Thacher & Bartlett LLP
900 G Street, N.W.
Washington, D.C. 20001
(202) 636-5822

Respectfully submitted,

            */s/ Celso Perez*
Celso Perez  (D.C. Bar No. 1034959)
Anand Balakrishnan**
Omar C. Jadwat**
Lee Gelernt**
Michael Tan*
American Civil Liberties Union
Foundation, Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2600

Jennifer Chang Newell***
Stephen B. Kang**
Julie Veroff***
American Civil Liberties Union
Foundation, Immigrants' Rights Project
39 Drumm Street
San Francisco, CA 94111
(415) 343-0774

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
American Civil Liberties Union
Foundation of the District of Columbia
915 15th Street, NW, 2nd floor
Washington, D.C. 20005
(202) 457-0800

*Attorneys for Plaintiffs*

*\*Pro hac vice application forthcoming*
*\*\* Admitted pro hac vice*
*\*\*\*Filing pursuant to LCvR 83.2(c)*
*\*\*\*\*Application for admission*
*forthcoming*